## THE BENBRACK.[1]

### POWER v. THE BENBRACK.

*(District Court, E. D. Virginia. January 12, 1888.)*

SHIPPING—LIABILITY OF VESSEL FOR TORT—INJURY TO STEVEDORE—LATENT DEFECT.

One of a gang of stevedore's men engaged in loading a ship was injured by a bale of cotton falling upon him. The accident was caused by the breakage of the hook which was used in raising the cotton and lowering it into the hold. The hook was furnished by the ship, and gave way on account of a latent defect. *Held,* that the ship was not liable.

In Admiralty. Libel for damages.
*Neely & Seldner,* for libelant.
*Harmanson & Heath,* for respondent.

HUGHES, J. The leading facts of this case are as follows: The steamer Benbrack came from Liverpool to Norfolk for a cargo of cotton. She had, as part of her outfit, the engine, winch, tackle, and appliances necessary to the convenient loading of bales of cotton. The tackle consisted of the usual ropes, pullies, and hooks which constitute what is called a "fall." On arriving at the port of Norfolk, the steam-ship contracted with a stevedore here for the proper loading of the cotton and stowing it on board. It was part of the contract that the ship should allow her winch, tackle, fall, etc., to be used for this work, including the hook on which the bales of cotton were suspended when they were lifted from the wharf to the deck of the steamer. The work of loading the cotton commenced on the seventh December last, and went on without accident until the twelfth day of that month, when two of the bales suspended to the hook of the tackle, in being passed to the deck from the wharf, fell through an open hatchway, one of them striking the libelant, breaking his nose, and seriously wounding and bruising him in other respects, from which he was disabled, and has been laid up to the present day, (ninth January, 1888.) He is still unable to go to work, and is likely to re-

[1] Reported by Robert M. Hughes, Esq., of the Norfolk bar.

main so for a month or more yet to come. The cause of the accident was the breaking of the hook in the tackle on which the two bales of cotton were suspended while passing over the hatchway. The injured man was engaged with other laborers, at the time of the accident, in stowing away cotton on the under-deck below the hatchway. It is not contended that there was negligence in the fact of this hatchway being uncovered. The hook which was broken as described is brought into court, and it is plain from an inspection of it that the cause of breakage was a flaw which involves more than half of the fractured surface. The defect was a latent one, which was most probably such as would have eluded a close scrutiny; though we have no direct evidence on the subject. The hook had been purchased new in Liverpool; had been spliced to the tackle during the voyage to Norfolk, to be ready for use; and had been actually used by the stevedores in stowing this cargo for five days before it broke and gave way, with the unfortunate result which has been described.

The diligence required of the ship in respect to this hook was that ordinary diligence which a prudent man is bound to exercise in conducting his own business. There is no evidence in this case tending to show that the master of the Benbrack was delinquent in this respect. The accident did not occur from any improper use of, or strain upon, the hook, as was the case in *The Mary Stewart*, 5 Hughes, 314, 315. The flaw had not been detected before the accident, and was latent, and probably imperceptible. The hook had done its work for five days, and the existence of the flaw was unknown and unsuspected. The laborers who were using it, and those who were near by, and who had observed its use for five days, did not detect or suspect the flaw. The hook had been purchased at Liverpool in good faith, and with confidence in its freedom from defect. I think, therefore, that the ship is not responsible for the accident which so seriously injured the libelant. The makers and manufacturers of tools and mechanical implements are responsible for their soundness; but those who purchase them in good faith, and use them prudently, and in ignorance of latent defects, cannot be held to guaranty all others, equally competent with themselves to judge of their quality, against accidents from them. I will sign a decree for the defendant ship.

It has not been necessary in this decision to consider the question of liability if the flaw in the hook which broke had been patent and observable. In that case, the defect would have been just as apparent to the stevedore who employed the libelant as to the master of the ship. The stevedore would have been under no necessity to use the hook. It would have been his duty to discard it, and to have obtained a proper one. His using it was the immediate cause of the accident. A part of his contract with the libelant was to see that the latter should be safe from all carelessness and negligence on his own part. The privity of contract in the case was between the stevedore and the libelant, and the remedy of the libelant was immediately against the stevedore, and not remotely against the ship. The case would then have been governed by what I said in the case of *The Mary Stewart*.