## THE CONCORD.

### LUNNEY v. THE CONCORD.

#### (District Court, S. D. New York. November 29, 1893.)

SHIPPING—PERSONAL INJURIES—SHIP'S LADDER—DEFECT NOT DISCOVERABLE.

A vessel is not liable to workmen for latent defects in its ladders, not discoverable by examination, where there is no evidence of lack of diligence and care in the equipment. Accordingly, where the rung of the ladder, which was suspended from a rope, broke while the libelant was descending it, and the ladder was apparently sound, and had been in common use, and was apparently fit for the purpose, and no negligence in the ship or owners was proved or indicated, *held*, that the libelant could not recover.

In Admiralty. Libel by Thomas Lunney against the steamship Concord to recover damages for personal injuries. Dismissed.

Hyland & Zabriskie, for libelant.

Convers & Kirlin, for claimant.

BROWN, District Judge. On the 12th of November, 1892, as the libelant, a carpenter, was descending a ladder in No. 4 hatch, going to the lower hold of the steamship Concord, a rung of the lad

der broke, and the libelant fell to the bottom of the hold and sustained injuries for which the above libel was filed.

The vessel was under charter to J. M. Ceballos & Co., and her charter provided: "If more than one kind of grain is shipped, all extra expense to be paid by charterers." Desiring to ship more than one kind of grain, the charterers, under this clause, had engaged a carpenter to put up certain necessary partitions in the lower hold in No. 4 hatch, by whom four men, including the libelant, were employed to do the work. They went to the ship on the afternoon of Friday the 11th, and began work in hatch No. 3, under some misapprehension of orders; but they were soon stopped, and on the following morning they came to work at hatch No. 4. The steamer had no stationary ladders for the lower hold. All were of wood and movable. A fore and aft partition already divided the hold; and in order to work on each side of this partition in No. 4 hatch, a ladder was put down on each side. The workmen took the two ladders which they had used the day before in No. 3 hatch. One of the ladders was long enough to reach from the bottom of the hold to the coamings, and was placed on one side of the hatch; the other ladder was to be adjusted on the other side of the partition; but it was about four feet short, and instead of being lowered at once to the bottom of the hold, and allowed to rest at the top against the partition, as was done the day before in hatch No. 3, it was suspended in the hatch by a rope running from the winch above to the third rung from the top. The libelant then went down this ladder for the purpose of making it secure by a cleat at the bottom after he was down. When part way down the ladder, and below the rung by which it was suspended, the rung broke, and by the fall he was injured as above stated.

The ladder was about 18 feet long, weighing apparently from 100 to 200 pounds. An examination of the broken rung showed that where it enters the side beam, it is about an inch in diameter; and that about one-fifth of the diameter on one side was defective. The defect was not visible by any examination before the accident, but concealed inside of the beam.

I cannot sustain the contention of the claimant that the ship was under no obligation to supply any ladders for the charterers' use in making these repairs; on the contrary, I think that in making the repairs contemplated by the charter at their own expense, the charterers were entitled to all the ordinary movable appliances which belonged to the ship and were in customary use in going from one part of the ship to the other; and that the ship and her owners are responsible for any lack of diligence in supplying ladders suitable for the purposes for which they were intended.

On the other hand, it was not legal negligence that the ship did not use iron ladders, or stationary ladders, such as most ships of her class now more commonly use, instead of following the older fashion of movable ladders, provided they were reasonably sufficient. The Maharajah, 40 Fed. 784, affirmed 1 C. C. A. 181, 49 Fed. 111; The Serapis, 2 C. C. A. 102, 51 Fed. 91.

The evidence leaves no doubt that the rung broke in consequence of the addition of the weight of the ladder to the weight of the man descending it while it was suspended by a rope to the rung; and also in consequence of the defect on one end of the rung. The defect, from its appearance, seemed to be an old one; but the ladder was in common use by the seamen, and on the day before the accident, when in its ordinary position, leaning against the partition in hatch No. 3, it was used by all the carpenters, including the libelant, who went up and down upon it several times. While it cannot be said that the ladder was specially designed to be used in the way that it was used in this instance, viz., suspended from one rung while the man descended upon it, the evidence shows that it was not uncommon for short ladders to be used in this way temporarily, before being adjusted as intended. I do not feel warranted in finding, therefore, that the mode in which it was used was unauthorized, so as to constitute a negligent use. The libelant was not a heavy man, though the weight of the ladder, added to his own, would undoubtedly be somewhat greater, but not much greater, than that of persons who in the ordinary course of navigation might at times have to use such a ladder. I cannot find, therefore, that the weight to which the rung in this case was subjected was greater than ought to be provided for: or that the men using the ladder ought to have known that there was any risk of danger in adopting this method of going into the hold before adjusting this ladder in its intended position.

The case, therefore, seems to turn wholly on the question whether the ship is liable for the defect in the rung which made it unfit for this occasional use, to which it was liable. The ladder was apparently a firm and strong one. Examination, as the libelant's witnesses stated, would not, and could not, disclose this defect of the rung. There is no evidence of any lack of diligence or care on the part of the owners, or of any of the officers of the ship, in respect to these ladders; and this distinguishes the present case from all those cited for the libelant. There was not any insufficiency in the number of ladders supplied for the ship, and there was at least one other long ladder that might have been used.

The case is, therefore, really one of a latent defect, not discoverable by any ordinary care or diligence. By the law of common carriers, the ship is responsible for damage to goods in consequence of such latent defects. The Rover, 33 Fed. 515, and cases there cited; The Bergenseren, 36 Fed. 700. The liability of the ship and owners to employes as respects the sufficiency of equipment and appliances, is not that of warranty, as it is in regard to goods, but only for the exercise of "due diligence." The Flowergate, 31 Fed. 762; The Dago, Id. 574; The Benbrack, 33 Fed. 687; Canter v. Mining Co., 35 Fed. 41; 27 Stat. 445, c. 105, § 3.

As there is no evidence of negligence in regard to the ladder, the libel must be dismissed.