## THE MAHARAJAH.

## ENNIS v. THE MAHARAJAH.

### (District Court, S. D. New York.    November 25, 1889.)

1. **MASTER AND SERVANT—ASSUMPTION OF RISK.**
    A workman employed to work a particular machine, which he fully understands, takes the risk of accidents that may happen to him while using it, so long as the machine is maintained in the same condition as by his contract he has a right to expect and to rely upon.    The master is not liable for accidents merely because he has not adopted recent improvements that afford some additional protection.

2. **SAME.**
    The libelant, a longshore-man, was employed to work a winch in discharging cargo.    The steam crank-bar, turned by hand, came within three inches of a cog-wheel.    While turning the crank, the libelant's hand slipped, and his thumb and two fingers were crushed by the cogs.    The winch was 12 years old.    More recent ones have the cog-wheel protected by a covering.    One winch of that kind was on the ship.    No previous accident from this winch was proved, except one arising from gross carelessness.    *Held,* (1) that the old winch was not of so dangerous a character as to be unfit for use; and, no weakness or disorder of the winch being shown to have contributed to the accident, *held,* (2) that the libelant took the risk, and could not recover of the ship, no negligence of respondent being proved.

In Admiralty.    Libel for personal injuries.

*Robert D. Benedict,* for libelant.

*Butler, Stillman & Hubbard,* (*Wilhelmus Mynderse,* of counsel,) for claimants.

BROWN, J.    On the afternoon of September 22, 1883, the libelant, while operating a winch on board the steamer Maharajah, lost the thumb and two fingers of his right hand, which were crushed between the cogs of the wheel and the reversing lever.    The crank-bar, which let the steam on and off, was turned by a horizontal handle four and one-half inches long,

the end of which, when turned inwards, came within three inches of the cog-wheel. While turning the handle, the libelant's hand accidentally slipped off, and was caught by the cogs. The libelant seeks to hold the vessel answerable for his injuries, on the ground that the winch was an old and dangerous machine, because it had no covering or protection, like the more recent machines, and because the handle ran dangerously near the cogs. It is also alleged that the machinery was out of order.

Though the evidence shows that there was some escape of steam after the libelant had asked for more steam, the weight of proof, I think, is against the contention that the machine was out of repair or out of order, or that it had ever had any covering, or was ever in a condition substantially different from that in which the libelant was working it, and in which it had been long used. Nor does the evidence show that the escape of waste steam contributed to the accident. The libelant does not testify that the steam made the handle more slippery, or embarrassed him in his work. The moisture, for aught I know, may have made his hold more secure, rather than weaker. The winch was put in the vessel about 12 years before. It was of the kind then in ordinary use. Soon afterwards, improvements in winches were made, and during the last few years the cog-wheels in new winches have been usually provided with coverings, and are thereby safer for use. The Maharajah had one winch of the new pattern and two of the old. Though the handle on this machine came within three inches of the cogs, it is not shown to be different in this respect from the winches formerly in general use. The libelant was a longshore-man, employed by the day or hour. He was hired to work this winch. No skill was necessary, only care. Whatever liability there was to accident from the hand's slipping was visible and plain. It was not a concealed or unsuspected danger, but one as well known to the workmen as to the employer. The master can only be held liable on the ground of negligence, or for some breach of duty. The question, then, comes down to this: Is it negligence, or a breach of legal duty, for a master to hire men to work upon an old machine merely because there are newer and safer ones in use? As respects travel on steam railways, many of the courts of this country hold the carrier bound to keep pace with new inventions in the direction of safety. But this rule is an exceptional one, established upon grounds of public policy, and for the safety of human life. It has never been applied to the relation of master and servant. There the ordinary rule is that the workman takes the risks incidental to his employment. As regards machinery, it is the master's duty, say the supreme court in the case of *Hough* v. *Railway Co.*, 100 U. S. 213–219, "to exercise due care in its purchase originally, and in keeping and maintaining it in such condition as to be reasonably and adequately safe for use by employes." The context shows, however, that this language was used in reference to the disorder, defects, or weakness which arise from the use of machinery, or from concealed dangers which the workman has no means of knowing, rather than to such liabilities to accident as belong to the nature of the machine, and are visible and plain, and known to the workman

when he engages employment.    In the case just cited the supreme court say:

"If the engineer, after discovering or recognizing the defective condition of the cow-catcher or pilot, had continued to use the engine without giving notice thereof to the proper officers of the company, he would, undoubtedly, have been guilty of such contributory negligence as to bar a recovery, so far as such defect was found to have been the efficient cause of the death."

This indicates that no recovery could be had where the workman voluntarily takes work upon machinery knowing its dangers, and not expecting or relying upon any change to be made in it.    This is very clearly stated by COCKBURN, C. J., in the case of *Clarke* v. *Holmes*, 7 Hurl. & N. 937–943, a case cited at length by the supreme court in *Hough* v. *Railway Co.*, referred to above.    "No doubt," he says, "when a servant enters on an employment from its nature necessarily hazardous, he accepts the service subject to the risks incidental to it, or, if he thinks proper to accept an employment on machinery defective from its construction or from the want of proper repair, and with knowledge of the facts enters on the service, the master cannot be held liable for injury to the servant, within the scope of the danger which both the contracting parties contemplate is incidental to the employment.    The rule I am laying down goes only to this, that the danger contemplated on entering into the contract shall not be aggravated by any omission on the part of the master to keep the machinery in the condition in which, from the terms of the contract or the nature of the employment, the servant had a right to expect that it would be kept."    If in any case the master could be held liable for accidents happening to a workman whom he had hired to work upon a well-known machine, in its usual condition, it could only be, I think, when it might fairly be said that, having reference to other machines, the machine in question was so hazardous as not to be fit for use, and when the employe must be deemed to have been ignorant of its dangers.    See, also, *Railway Co.* v. *Herbert*, 116 U. S. 642, 647, 652, 6 Sup. Ct. Rep. 590.

I cannot find that this machine was not reasonably fit for use, though it had less protection to the workman than newer forms.    It was of a kind long used, and the only previous accident shown to have happened in connection with it arose from gross carelessness.    There is some evidence to the effect that the libelant was sitting at the time of this accident.    He denies this, and I make no further reference to it.    But he does not claim to have been unacquainted with the machine, or its possible danger from the hand's slipping.    Whatever danger there was, as I have said, was plain.    There was no promise to afford further protection against this danger, and the libelant did not expect it, or rely upon it, as the plaintiff did in *Hough* v. *Railway Co.*, in continuing his work. There was no concealment.    He was in no way misled.    The language of the court in the case last cited does not apply to cases like this.    It does not abridge the liberty of contract between employer and employed, as respects work upon old and well-known machines, though newer ones may have some additional safeguards; nor does it change the burden of

the risk of accident, where the nature and danger of the machine are known to the employe, and where the use of the machine is not unreasonable, and it is kept, as this was kept, in the condition in which the employe agreed to work it. Though the accident was a severe one, entitling the libelant to much sympathy, I cannot hold that the law affords him any redress. The libel is therefore dismissed.