TAMPA INTEROCEAN S. S. CO. v. JORGENSEN.*

No. 8506.

Circuit Court of Appeals, Fifth Circuit.

Jan. 18, 1938.

*Rehearing denied Feb. 22, 1938.

928

Benjamin W. Yancey, Geo. H. Terriberry, Jos. M. Rault, and Walter Carroll, all of New Orleans, La., for appellant.

Herbert W. Waguespack, of New Orleans, La., for appellee.

Before FOSTER, SIBLEY and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Sigvald Jorgensen, an able seaman of long experience, was injured by falling through the hatchway into the hold of his vessel, and recovered in a jury trial damages of the ship's owner, Tampa Interocean Steamship Company, under section 33 of the Merchant Marine Act, 46 U.S. C.A. § 688. The Steamship Company appealing assigns as error a refusal to instruct the jury to find for the defendant and the refusal to give certain requested charges.

The plaintiff below contended, and here contends, that appellant was negligent in not furnishing him a safe place to work and in ordering him into an unsafe place without warning of a danger unknown to him. In reply it is argued that the danger complained of was open and obvious, as was the means provided to avoid it, and the fault was wholly on the part of the appellee. There is considerable conflict in the evidence, but it is sufficient to support a finding of facts outlined as follows: The ship on October 26, 1935, was discharging freight through the rear hatchway while Jorgensen was engaged elsewhere painting the vessel. The hatch on the upper deck was surrounded by a coaming about four feet high. Nine feet below the deck was the opening through the lower deck into the hold, whose bottom was thirty feet further down. The 'tween-deck load in-

cluded staves piled across the ship with their ends reaching within about a foot of the afterside of the 'tween-deck hatch. There were no safety lines around this hatch, the sockets to support them being covered up by the staves. The permanent iron ladder leading through the hatchway from the upper deck to the lower deck was about the center of the afterside of the hatch, and one descending it would have to walk along the narrow way at the ends of the staves. On the forward side of the hatch a passageway had been left across the lower deck six feet wide, and in one of the forward corners of the hatchway a pilot ladder was placed to reach this passage. Jorgensen had not helped to load or unload the ship, and did not know of the situation 'tween decks nor of the pilot ladder. No obstruction had been placed at the head of the permanent ladder to prevent its use, and no notice was posted there or elsewhere to warn against it. At about 8:30 p. m., and after dark, Jorgensen and other seamen were ordered by the boatswain to cover the 'tween-deck hatch. As Jorgensen approached the hatch from aft on the upper deck, the chief mate told him to go down and help put the beams on. A spotlight was pointing down into the hold, whose sufficiency is in dispute. Two men preceded Jorgensen down the permanent ladder and walked past the staves in safety to the sides of the 'tween-deck hatchway. They did not see or know of the pilot ladder. Neither did Jorgensen. As he, with back turned towards it, descended the permanent ladder, he became aware of the stowage of the staves, but believing there was no other route to the work he was ordered to do, he attempted to walk past them. A projecting end caught his jacket and caused him to lose his balance and to fall into the hold. The winchman in charge of the spotlight testified that he also did not see or know of the pilot's ladder till after the accident.

■ We overrule Jorgensen's contention that it was necessarily negligent to stow the staves so near the hatch and to order the hatchway covered in port at night instead of waiting till day. A sufficient passage around the hatch 'tween decks was arranged on the forward side, and a safe ladder to reach it. But that the stowage had rendered it unsafe to use the permanent ladder stands confessed by providing the temporary ladder. Had the seamen observed the temporary ladder it would no doubt

have suggested a necessity to use it. The question is whether the pilot's ladder, which provided a safe way to go 'tween decks, was so obvious that the whole fault is to be attributed to Jorgensen in not seeing and using it, or whether the ship's officers should have warned him to use it when they ordered him down.

■ The Merchant Marine Act, § 33, 46 U.S.C.A. § 688, makes applicable the federal statutes relating to injuries to railway employees. But the common-law doctrine of assumption of risk is no part of the statute, although applicable along with the statute in common-law suits. That doctrine is not imported by the statute into cases of maritime torts, and exists only so far as the admiralty law has always recognized it. According to that law a seaman assumes the risks normally incident to his calling, but not that of negligent failure to provide a seaworthy ship and safe appliances. Especially does the necessary discipline of a ship require of a seaman prompt and unhesitating obedience to direct orders without stopping to examine into possible unusual risks. The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075. In the case of Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082, a seaman while unloading his vessel in port was injured by falling into the hold, and it was argued there, as it is argued here, that there was a safe way and an unsafe way for him to proceed, and that he had assumed the risk of the unsafe way by following it. But the court pointed out that contributory negligence did not defeat but only reduced recovery, and held the whole matter to be for the jury. In Hardie v. New York Harbor Dry Dock Corporation, 2 Cir., 9 F.2d 545, 546, the choice of an unsafe way was held to defeat recovery, but the court stated the law thus: "If there be two ways, one safe and the other dangerous, the servant chooses the dangerous way at his peril, if the difference is known to him." See, also, Holm v. Cities Service Transp. Co., 2 Cir., 60 F.2d 721; Johnson v. United States, 2 Cir., 74 F.2d 703. It appears in this case that Jorgensen did not know the way he chose was unsafe when he chose it, nor did he know that there was any other way to get to his work. The pilot's ladder at night was not so obvious that he must have seen it and been warned by it. Several others of the crew did not see it, and it does not appear that any of them did. Jorgensen took the usual and

natural way to descend, without really making any choice of ways. The jury could conclude that it was negligent to order him down at night into a situation 'tween decks that was unknown to him and might be dangerous, without warning him not to go by the usual route. Our decision in Carlson v. United States, 5 Cir., 71 F.2d 116, is not in point.

The court charged fully the law as we have stated it. Two of the requests refused went too far in asking the court to decide whether the plaintiff or defendant was negligent. The third, mainly relied on, relates to the choice of routes for going 'tween decks and made the defeat of the plaintiff thereby to follow "if the plaintiff knew or *by the exercise of reasonable prudence should have known* of the existence of the safe method." The court so modified it as to say: "You are instructed that if the plaintiff was furnished two methods of entering the 'tween deck space, one obviously safe and the other obviously unsafe, and *if the plaintiff knew the safe method* and notwithstanding chose the unsafe method the defendant is not liable." Under the circumstances detailed just above we think the charge given was not erroneous.

Judgment affirmed.