## SOCONY-VACUUM OIL CO. *v.* SMITH.

No. 195.  Argued December 15, 1938.—Decided January 3, 1939.

*Mr. Louis Mead Treadwell,* with whom *Messrs. Henry B. Potter* and *John J. Manning* were on the brief, for petitioner.

*Mr. George J. Engelman* for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The question is whether assumption of risk is a defense in a suit brought by a seaman under the Jones Act to recover for injuries resulting from his use, while on duty,

of a defective appliance of the ship, when he chose to use the unsafe appliance instead of a safe method of doing his work, which was known to him.

Respondent, a seaman, brought the present suit in the District Court for southern New York to recover, under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, for an injury received from a fall in the engine room of petitioner's vessel. The fall was caused by a defective step on which respondent stood while on duty, when seeking to learn, by touching with his finger, whether an engine bearing was overheated.

In submitting the case to the jury the trial court applied the admiralty rule of comparative negligence, instructing the jury that negligence of respondent contributing to the accident was not a bar to recovery but was to be considered in mitigation of damages. The court refused petitioner's request for an instruction that if respondent could have performed his duty without use of the defective step, he assumed the risk of injury from it. Instead, the court charged that there was no assumption of risk by the seaman where the shipowner failed in its duty to furnish a safe appliance.

Judgment of the district court, upon a verdict in respondent's favor, was affirmed by the Court of Appeals for the Second Circuit, 96 F. 2d 98, on authority of *The Arizona* v. *Anelich*, 298 U. S. 110, and *Beadle* v. *Spencer*, 298 U. S. 124. The court's decision was predicated upon its conclusion that respondent had free choice of a way to reach and touch the bearing, without standing on the defective step, and it held that in the circumstances, and since the seaman had not used the defective appliance contrary to orders, the trial judge had correctly instructed the jury that assumption of risk was not a bar to recovery. We granted certiorari, October 10, 1938, upon a petition asking us to review this ruling in the light of our decisions in *The Arizona* and the *Beadle* cases, *supra,*

the question being one of public importance in the application of the maritime law as supplemented by the Jones Act.

A preliminary point, much discussed in brief and argument here, is whether the question ruled upon below is presented by the record. Respondent insists that there was no evidence from which the jury could conclude that there was a safe method known to him by which he could have reached the bearing without using the defective step and that he chose the unsafe instead of the safe method.

Respondent was employed as an oiler in petitioner's engine room. It was his duty while the vessel was under way to touch with his finger, at intervals of twenty minutes, a bearing of the propeller shaft, in order to ascertain whether it was overheating and in need of additional lubrication. Directly in front of the bearing, as he approached it, was an iron step, located about one foot above the engine room floor and bolted to the bedplate which supported the bearing. Respondent testified that the step was braced on its underside by a bracket or strut, and that about two or three weeks before the accident he had observed that the bracket was loose and out of place and had reported the fact to a superior officer.

Respondent also gave the only account of what occurred at the time of the accident. He testified that in order to reach the bearing it was necessary for him and was his uniform practice to stand with his right foot upon the step with his left advanced and placed upon the bedplate, and with his left hand holding, for support, the upper edge of an adjacent vertical slush pan; that, standing in this position, he placed his right hand in a hole extending downward through the bearing cap a distance of eight or ten inches, where he touched the shaft and the adjoining bearing to discover whether they were overheated and to inspect the oil which stuck to his fingers

and which, if discolored, would indicate that the journal was beginning to gripe because of excessive friction; that as he stepped down his left foot struck the loose bracket, which had projected beyond the edge of the step, causing him to fall and suffer the injuries complained of. There was testimony by petitioner's witnesses, all denied by respondent, from which the jury could have found that it was possible for respondent to have reached the bearing while standing on the floor, without the use of the defective step, by seizing with his right hand a grab iron located on a nearby column and reaching with his left hand to touch the left end of the bearing, which extended through the bedplate; that this was the usual and only appropriate way to examine the bearing, and that respondent had been seen to reach it in that manner. There was also testimony that other oilers had touched the bearing without using the step while standing on the floor, with right hand grasping the upper edge of the vertical crank-pit guard, which was adjacent on the right and nearer to the bearing than the grab iron. There was evidence of the relative localities of the several parts of the structure mentioned and of the distances between them, indicating that respondent could have reached the bearing, either at its left end or through the hole in the bearing cap, while standing on the engine room floor and without using the step.

We must accept the verdict as establishing the negligent failure of petitioner to furnish a safe appliance, the iron step, and that the plaintiff knew that it was defective at the time of the accident, for the only evidence of any breach of duty by petitioner was respondent's testimony that he knew of the defect and had reported it to the first assistant engineer two or three weeks before the accident. Upon all the evidence it was for the jury to say whether respondent was aware that in reaching the bearing with one hand, either at its end or through the hole in the bear-

ing cap, he could avoid the use of the defective step by standing on the engine room floor and steadying himself by seizing with his right hand the grab iron or the crank-pit guard on his right, or by placing his left hand on the edge of the slush pan.

No specific instruction was asked or given as to what the verdict should be if the jury concluded that respondent had knowingly made such an election. Instead, the court charged generally "that the ship owner is under a duty to furnish the seaman with a safe place in which to work" and "There is no contributory negligence or assumption of risk on the part of a plaintiff in so far as the defendant fails in these duties." Consequently, there is no basis for disturbing the judgment unless this charge is erroneous as applied to the evidence taken most favorably to petitioner.

The question whether assumption of risk is a bar to a suit by a seaman to recover under the Jones Act for injuries caused by a defective appliance, when he has a free choice to avoid the use of it, is a novel one in this Court. No such choice was involved in *The Arizona* or *Beadle* cases. There assumption of risk by the seaman, which would have barred recovery at common law, was concededly not a defense under the admiralty rule. The decision was that the Jones Act, in extending to seamen all the rights to recover for injuries resulting from defective appliances given to railway employees by the Federal Employers' Liability Act, 35 Stat. 65, 45 U. S. C. § 51, had left undisturbed the admiralty rule with respect to assumption of risk. In holding that the rule had not been changed, we did not consider the question now presented whether, within that rule, assumption of risk is a defense where the seaman could have avoided the use of the unsafe appliance by the free choice of a safe one.

Before the Jones Act a seaman was entitled to recover, from a vessel or its owner, indemnity for injuries due to an

unseaworthy vessel, or for "failure to supply and to keep in order the proper appliances appurtenant to the ship." *The Osceola,* 189 U. S. 158, 175; *The Arizona* v. *Anelich, supra,* 120 *et seq.* Contributory negligence, then as now, was not a defense in suits brought by seamen to recover for injuries attributable to defective equipment, but was ground only for mitigation of damages. See *The Max Morris,* 137 U. S. 1; *The Arizona* v. *Anelich, supra,* 122, and cases cited. And no American case appears to have recognized assumption of risk as a defense to such a suit. In numerous cases this defense was either denied or ignored in circumstances plainly calling for its application had it been available. *Halverson* v. *Nisen,* Fed. Cas. No. 5,970; 3 Sawy. 562; *The Edith Godden* (D. C.), 23 F. 43; *The Noddleburn* (D. C.), 28 F. 855; *Olson* v. *Flavel* (D. C.), 34 F. 477; *The A. Heaton* (C.C.), 43 F. 592; *The Julia Fowler* (D. C.), 49 F. 277; *Lafourche Packet Co.* v. *Henderson* (C. C. A.), 94 F. 871; *The Fullerton,* 167 F. 1; *Globe S. S. Co.* v. *Moss,* 245 F. 54; *The Colusa* (C. C. A.), 248 F. 21; *Cricket S. S. Co.* v. *Parry,* 263 F. 523; *Storgard* v. *France & Canada S. S. Corp.* 263 F. 545.

In some of these cases the seaman had voluntarily shipped on a vessel which he knew to be unseaworthy, *Cricket S. S. Co.* v. *Parry, supra;* see *Scheffler* v. *Moran Towing & Transportation Co.,* 68 F. 2d 11, 12. In others it was apparent that the seaman had chosen to expose himself to the dangers of unsafe appliances when there was a safe alternative. *The Julia Fowler, supra; Olson* v. *Flavel, supra.*

In some cases arising after the Jones Act where the defense was allowed, the employee was thought to have had the status of a stevedore or shore worker and not that of a seaman. *The Maharajah,* 40 F. 784; *Cunard S. S. Co.* v. *Smith,* 255 F. 846; *Hardie* v. *New York Harbor Dry Dock Corp.,* 9 F. 2d 545; *Skolar* v. *Lehigh Valley R. Co.,* 60 F.

2d 893; *Scheffler* v. *Moran Towing & Transportation Co.,* *supra,* 12; *Yaconi* v. *Brady & Gioe, Inc.,* 246 N. Y. 300, 306; 158 N. E. 876. In *Johnson* v. *United States,* 74 F. 2d 703, the seaman had made his choice in disobedience of orders, and in another where the defense was allowed the seaman, while not on duty, though in the course of his employment, had chosen to go into an unsafe part of the vessel, knowing that there was an alternative. *Holm* v. *Cities Service Co.,* 60 F. 2d 721.[1]

Here respondent was a seaman; he was on duty when injured; and there was no evidence that he acted in disobedience of orders. In the absence of any controlling or persuasive authority we look to the reason of the admiralty rule of assumption of risk in order to ascertain its appropriate limits. Many considerations which apply to the liability of a vessel or its owner to a seaman for the failure to provide safe appliances and a safe place to work are absent or are of little weight in the circumstances which attend shore employment, in relation to which the common law rules of assumption of risk and contributory negligence have been developed.

The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman. His complaints to superior officers of unsafe working conditions not infrequently provoke harsh treatment. He cannot leave the vessel while at sea. Abandonment of it in port before his

---

[1] In *Tampa Interocean S. S. Co.* v. *Jorgensen,* 93 F. 2d 927, 930, the Court of Appeals for the Fifth Circuit, in affirming a judgment in favor of a seaman, took occasion to approve the following instruction by the trial court to the jury: "You are instructed that if the plaintiff was furnished two methods of entering the 'tween deck space, one obviously safe and the other obviously unsafe, and *if the plaintiff knew the safe method* and notwithstanding chose the unsafe method, the defendant is not liable."

discharge, to avoid unnecessary dangers of employment, exposes him to the risk of loss of pay and to the penalties for desertion.[2] In the performance of duty he is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety of alternative courses of action. Withal, seamen are the wards of the admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances attending their calling. *The Arizona* v. *Anelich, supra,* 123, and cases cited; *Calmar Steamship Corp.* v. *Taylor,* 303 U. S. 525. It is for this reason that remedial legislation for the benefit and protection of seamen has been liberally construed to attain that end. *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 380, 381; *Jamison* v. *Encarnacion,* 281 U. S. 635, 639; *Alpha S. S. Corp.* v. *Cain,* 281 U. S. 642; *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 375; *Warner* v. *Goltra,* 293 U. S. 155, 157.

Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery but only mitigates damages. There being no defense of assumption of risk where the seaman is without opportunity to use a safe appliance, it seems plain that his choice of a defective instead of a safe one, resulting in injury, does not differ in either the quality of the act or in its injurious consequences, in any practical way, from his correspondingly negligent use of a safe or an unsafe appliance, where its use has contributed to an injury resulting from a breach of duty by the owner. See *The Wanderer,* 20 F. 140; *The Frank and Willie,* 45 F. 494;

[2] See R. S. § 4596, 46 U. S. C. § 701.

*John A. Roebling's Sons Co.* v. *Erickson,* 261 F. 986, 987; *Storgard* v. *France & Canada S. S. Corp.,* 263 F. 545. In either case the seaman's negligence is a contributing cause of his injury, without which the ship owner would be liable to the full extent of the damage.

The incongruity and practical embarrassments in the application of a rule that the negligence in the one case bars recovery, while that in the other only reduces the recoverable damages, are evident. The common law is consistent in holding that both contributory negligence and assumption of risk are defenses. But other considerations apart, it seems inconsistent, and an impracticable refinement, to apply the rule for which petitioner contends in a system of law which maintains the comparative negligence rule to the fullest extent. This was recognized in *Olson* v. *Flavel, supra,* and *The Julia Fowler, supra,* where the choice by the seaman of an unsafe appliance was held not to bar recovery but to be a proper basis for a substantial reduction of damages because of the negligence of the choice. In *The Julia Fowler, supra,* the eminent admiralty judge, Addison Brown, held that a seaman who had suffered injury through the deliberate use of a halliard known to be defectively spliced when a sound rope was available was entitled to recover, but with diminution of damages because of his negligence in using the unsafe rope.

We think that the consistent development of the maritime law in conformity to its traditional policy of affording adequate protection to seamen through an exaction of a high degree of responsibility of owners for the seaworthiness of vessels and the safety of their appliances will be best served by applying the rule of comparative negligence, rather than that of assumption of risk, to the seaman who makes use of a defective appliance knowing that a safe one is available. The power of the trial judge

to guide and instruct the jury and his control over excessive verdicts afford as adequate a protection to owners as in any other case where the negligence of the seaman, whatever its degree, has contributed to an actionable injury.

Upon the facts of this case, there was no error in the charge of the trial court as to assumption of risk. Its instruction as to the application of the rule of comparative negligence was general and no exception was taken to it. Petitioner would have been entitled to a more specific instruction, if requested, as to the appropriate effect upon the amount of the verdict of the relative degrees of petitioner's and respondent's negligence if the jury should find that respondent had knowingly failed to choose an available safe method of doing his work.

We leave to future cases as they may arise the determination of what rule is to apply in cases where the seaman's election to use an unsafe appliance is in disobedience of orders or made while not on duty.

*Affirmed.*

MR. JUSTICE MCREYNOLDS thinks the petitioner's request for the charge in respect of assumption of risk should have been granted and that, for that reason, the challenged judgment should be reversed.

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.