ROSE STAHLIN, ADMINISTRATRIX, ETC., OF JOSEPH STAHLIN, DECEASED, RESPONDENT, v. LEHIGH VALLEY RAILROAD COMPANY, APPELLANT.

Submitted May 7, 1940—Decided October 1, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the appellant, *Edward A. Markley* and *Charles W. Broadhurst.*

For the respondent, *Thomas F. Doyle.*

The opinion of the court was delivered by

PARKER, J. Plaintiff's decedent was in the employ of the defendant as a "floatman" on a tugboat in New York harbor, and came to his death by falling from a steel car float which the tug was taking in tow. Decedent in the performance of his duty had boarded the float, and was in the act of receiving the bight of a hawser thrown from the tug, for the purpose of making it fast to the float, when he lost his balance, fell

overboard between the tug and the float, and was drowned. He was not seen after he fell, and efforts to save him were unsuccessful. It was dark at the time, being about three-thirty A. M. on March 30th, 1932. The plaintiff as general administratrix brought this action pursuant to section 33 of the Merchant Marine act of 1920, the language of which is here inserted for convenience: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employes shall apply; and in the case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employes shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

The complaint charges negligence in a number of different forms, which will be mentioned as they are discussed below, and need not be enumerated here. Four witnesses were sworn for the plaintiff: the widow herself, substantially on the *quantum* of damages: the captain of the tugboat, mainly but not wholly as to the circumstances and details of the accident: Frank Brinkman, an experienced shipmaster, called as an expert on the question of safe and proper practice under the circumstances surrounding the accident: and Theodore DeMars, a qualified master mariner, familiar with tugboat conditions in New York harbor. The life expectancy of the deceased was stipulated, and the plaintiff rested. A motion to nonsuit was made and denied, and exception entered. Defendant offered no evidence except certain photographs of car floats for purposes of illustration, and two official "certificates of inspection" of the tugboat, covering a period of time which included the date of the accident. Motion to direct a verdict for defendant was then made,

stating the same grounds as stated in the motion to nonsuit, and was likewise denied and exception entered. Apparently there was no argument of either motion beyond stating the grounds of the motion. The two grounds assigned in both motions were: (1) no evidence of any negligence of defendant or its servants or agents which was the proximate cause of the death of plaintiff's intestate: and (2) that as a court question, decedent assumed the risk of the injuries as part of the terms of hiring. The jury were duly charged, and returned a verdict for the plaintiff, the amount of which is not now in question.

The case is submitted on briefs without oral argument: and the exceptions argued include the denial of the motions to nonsuit and direct, certain rulings on evidence, one instruction in the charge, and four requests to charge refused.

Passing minor details, which will be considered later when relevant to the discussion, the general situation at the time of the accident was this: the car float was to be "taken out of Bridge, Jersey City, to 149th Street, Harlem River." Deceased was put aboard the float, he cast off the mooring lines, a bow line from the tug was made fast to the outer end of the float, the tug backed out into the river pulling the float after it, the bow line was cast off, and the tug ranged up alongside the float about amidships, the starboard side of the tug toward the port side of the float. For towing, three lines were required: the "strap" leading aft from the bow of the tug to a pair of bitts on the float: the "backing line" from the side bitt of the tug to bitts on the float: and the "stern line" from the stern of the tug leading aft to bitts on the float. All three lines were in place: but the captain ordered the head line (a five-inch hawser, about one and three-quarter inches in diameter) to be doubled. Stahlin, the deceased, was on the float, in a narrow space between a freight car on the rails and the edge of the float. His right side was toward the tug, his right arm out to receive the hawser. This was thrown to him, as testified, not as a loose end, but as a "bight" or loop. He caught it over his arm but apparently lost his balance, fell into the water between the tug and the float, and was not seen again.

As the propriety of letting the case go to the jury depends in large measure on the correctness or otherwise of certain rulings on evidence, it is proper to deal first with those rulings. Point II for appellant is that "the trial court erred in admitting opinion evidence on the question of whether the throwing of the bight of the line was proper in accordance with the practice of good seamanship." Two witnesses produced as experts were allowed to testify, and did testify, that it was improper practice, for the reason, among others, that the double rope was too heavy and likely to throw the floatman off his balance in a place inherently dangerous: and that if a bight were used, it should be swung and not thrown. If it was proper to allow this opinion evidence, there was a case for the jury on the issue of negligence. The handling of the car floats by tugboats, like any other art or craft, is an occupation requiring special skill and experience, and may be performed properly or improperly. But defendant says in effect that the propriety of what was done is for the jury to decide on evidence of what was done and in what way it was done, and not on evidence of experts as to whether it was properly done. The correctness of the proposition in the appellant's brief, that "where the question or matter under investigation is so simple that the jurors are as well able as experts to pass upon the same, the admission of expert testimony is harmful error;" may well be conceded for present purposes; but this was not the factual situation in the present case. The question was one of proper practice in a skilled employment: and as this case was tried under a federal statute, we think the federal decisions are controlling, and speak in no uncertain terms. It suffices to cite the *"City of Washington"* case, 92 *U. S.* 31; *Eastern Trans. Line* v. *Hope*, 95 *Id.* 297, and *Union Insurance Co.* v. *Smith*, 124 *Id.* 405. We find no error here.

A similar point is the admission of expert evidence as to what should have been done after Stahlin went overboard. As to this, the uncontradicted evidence was that Stahlin went under the surface and was never seen again. The propriety of expert evidence as to what the tugboat captain and crew should have done at three A. M. to rescue an invisible drown-

ing man, is at least questionable: but as we conclude that the judgment must be reversed for reasons presently to be stated, the particular point need not be decided.

Point IV relates to similar expert testimony as to proper construction of a car float with tow rail and hand cables. We think the testimony should have been struck out on proper motion, on the ground that no uniform practice was shown. See *Traphagen* v. *Erie,* 73 *N. J. L.* 759; *Feil* v. *West Jersey,* 77 *Id.* 502. But there was no such motion.

Point V challenges the admission of a certified copy of testimony before the Board of Steamboat Inspectors. In view of the result we have reached, it is sufficient to say at this time that there appears to be both statutory and judicial authority justifying the action of the trial court.

Reverting to the motions to nonsuit and to direct for the defendant, we conclude that upon evidence that was properly admitted, there was a case for the jury on negligence.

And as to the second ground of the motion, assumption of risk. the statute applicable is the "Jones act," 41 *U. S. Stat. at L.* 1007; 46 *U. S. C. A.* 688, § 33, by virtue of which contributory negligence becomes comparative negligence as in interstate railroad cases: and assumption of risk is treated as comparative negligence. See *Socony* v. *Smith,* 305 *U. S.* 424. Hence a nonsuit or direction on the ground of assumption of risk was properly denied.

VI. Finally, alleged errors in the charge and in refusals to charge.

On this branch of the case we consider that there was error requiring a reversal. The complaint charged negligence in several particular aspects. One of these was in failing to employ competent servants to aid the deceased. (a) There was no evidence of such failure: and defendant requested the court to charge that: "The complaint in this case charges that the defendant was negligent 'in failing to employ competent fellow servants to aid and assist the plaintiff's intestate in the duties which were being performed on the night of the death of plaintiff's intestate.' I charge you as a matter of law that there is no proof in this case that the defendant was negligent in that respect, and

you therefore cannot find it liable on that ground." The court failed to charge the request, and instead charged as follows: "Now one of the other elements in the case is: The plaintiff charges that the defendant was negligent in failing to employ competent fellow servants to aid and assist the plaintiff's intestate in the duties which were being performed on the night of the death of plaintiff's intestate.

"I charge you as a matter of law, if you find that not to be so as a matter of fact in your consideration of this case, if you fail to find such to be the case, you therefore cannot find the defendant liable on that ground." This instruction, while not assigned as error, seems to have imposed on defendant the burden of showing affirmatively that it had employed competent help.

(b) "The complaint charged that the defendant was negligent in 'that the agents, servants, employes and members of the crew failed to attempt to rescue the decedent, known to them to have fallen overboard and drowned.'"

There was no evidence of such failure, and defendant requested the court to charge as follows:

"16. The complaint in this case charges that the defendant was negligent in 'that the agents, servants, employes and members of the crew failed to attempt to rescue the decedent known to them to have fallen overboard and drowned.' I charge you as a matter of law that there is no proof in this case that the defendant was negligent in that respect, and you therefore cannot find it liable on that ground."

The trial court refused to charge this request and, instead, instructed the jury as follows:

"The complaint also charges that the defendant was negligent in that the defendant's servants and employes and members of the crew failed to attempt to rescue the decedent known to them to have fallen overboard and drowned. I charge you as a matter of law, gentlemen, that unless the truth of that charge has been proved to you by the greater weight of evidence, you cannot find the defendant to be liable on that ground."

This instruction, if not indeed carrying an implication that there was evidence of failure to attempt a rescue, was at

least a submission to the jury of the question whether there was such evidence or not.

(c) Substantially the same point is made with respect to a charge in the complaint that there was negligence in that employes of defendant failed to co-operate in rendering assistance to deceased in the performance of his duties. Defendant requested the court to charge that there was no proof of any such negligence and that defendant could not be held liable on such a ground. The court refused so to charge but apparently adopted the language of the request with the significant addition of the word "if;" so that the instruction read "if there is no proof that defendant was negligent in that respect, then you cannot find the defendant liable on that ground."

It is a general rule that where requests to charge contain no proposition of law and are so framed as to be mere comments on evidence, a trial judge is under no obligation to charge them. *Bonhard* v. *Gindin,* 104 *N. J. L.* 599, 607. But the requests above quoted were not mere comments on evidence. Defendant was charged with negligence in a number of specified forms. As to one or more of these, we think there was evidence for consideration by the jury. As to others, there was no such evidence. Defendant was entitled to have the consideration by the jury limited to forms of negligence that were supported by some evidence, and barred by the court as to the others. In the case of *Ziegener & Lane* v. *Daeche,* 91 *N. J. L.* 634, in the Court of Errors and Appeals, the claim was separable and as to part, the evidence failed. The court held that this would not call for a nonsuit or direction for defendant on the whole claim, but that (at *p.* 637) "the proper way to raise this question as to any part of the claim was by a request to charge, and this was not done." See, also, *Le Bas* v. *Patriotic Assurance Co.,* 106 *Conn.* 119: 137 *Atl. Rep.* 241 (at *pp.* 242, 243), cited in 64 *C. J.* 833, *note* 36. In legal effect, a request to charge that there is no evidence to support a specific ground of negligence, and that the jury cannot find a defendant liable on that ground, is tantamount to a motion to nonsuit or direct as to the particular ground, and to be decided not by the jury but by the court: and if there was no such evidence, a request

to control the jury on the point raises a question of law and should be complied with.

(d) The foregoing considerations require a reversal to the end that a *venire de novo* issue: but it seems well to add a few words about another request to charge, and a response thereto by the court that was erroneous in a different aspect.

Request No. 20 was as follows:

"The complaint in this case charges the defendant was negligent 'in that the defendant, its agents, servants and employes, and members of the crew, so managed, controlled and operated the tug attached to the float on which the decedent was working, in such a careless manner as to cause the same to be moved in a sudden, abrupt and violent manner, without notice to the decedent, causing him to fall overboard.' I charge you as a matter of law that there is no proof in this case that the defendant was negligent in that respect, and you therefore cannot find it liable on that ground." It was refused and an exception noted. However, the court did charge as follows:

"It is further charged in the complaint that the defendants, its agents, servants and employes, and members of the crew, so managed, controlled and operated the tug attached to the float on which the decedent was working, in such a careless manner as to cause the same to be moved in a sudden, abrupt and violent manner, without notice to the decedent, causing him to fall overboard. I charge you as a matter of law that there is no proof in this case that the defendant was negligent in that respect, therefore you cannot find it liable on that ground. The court does not recall any proof along that line. However, it is to be your recollection, and not mine, that is to control, and if you find that there was such a sudden, abrupt and violent moving of the boat to cause him to fall overboard, that will be your conclusion despite what I have said to you to the contrary." To this instruction defendant excepted. It will be observed at once that it contained the contradictory instructions that on the one hand there was no such evidence, and on the other, that the jury were the judges as to whether there was. The cases seem to hold uniformly that this is harmful error. *Schroeder* v. *Public Service Railway Co.,*

118 *Atl. Rep.* 337 (not officially reported), and cases cited: *Brown* v. *Public Service Railway Co.,* 98 *N. J. L.* 747; 121 *Atl. Rep.* 612; *McLaughlin* v. *Damboldt,* 100 *N. J. L.* 127; 125 *Atl. Rep.* 314; 64 *C. J.* 671 *et seq.*

We conclude that for the errors above considered, there must be a reversal and a *venire de novo.*