**BARGE v. UNITED STATES et al.**

No. 24372-S

District Court, N. D. California, S. D.
Jan. 7, 1947.

Elmer P. Delany and Albert Michelson, both of San Francisco, Cal., for libelant.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal. (John H. Black, Edward R. Kay, and J. Hampton Hoge, all of San Francisco, Cal., of counsel), for respondent.

PRAY, District Judge.

The above-entitled cause is one that may be described as a seaman's action for damages for an alleged wrongful death. The libelant alleges that the respondents were the owners of the steamship "Anson Burlingame," which was engaged as a merchant vessel of the United States Merchant Marine. That said Oliver K. Barge, at the time of his death, was employed on this steamship as a seaman and carpenter, and was engaged and working in the course of his employment at the time of his fatal injuries. That on or about the 29th of September, 1943, while the steamship was afloat upon the navigable waters of the Pacific Ocean, and said Barge was working thereon as such carpenter and in the course of his employment, respondents negligently ordered and required him to operate a caterpillar lift being carried on the steamship, and at the same time negligently failed to warn him of the dangers in operating the lift and negligently failed to direct or instruct him how to operate the lift, although respondents knew, or should have known, that he did not know how it should be operated; that at the time Barge attempted to operate the lift, in obedience to the negligent order and requirement, and because of respondents' negligence aforesaid, said Oliver K. Barge, about 4:15 P.M., on said date, was caught and crushed between a shovel arm, track treads and other parts of said lift, and was fatally injured, as a direct and proximate result of the negligence of respondents, and died about 10:00 p. m. of said date, after suffering excruciating pain and anguish as a result of said injuries.

The deceased was survived by his widow, said Mildred Barge, now aged about 27, and two children, Robert, aged about 16, and Barlow, aged about 11; that they are the sole heirs of deceased, and were dependent upon the earnings of deceased for their maintenance and support. That said Barge was thirty-three years of age, in good health, and was earning, or capable of earning, $400 per month, together with board and lodging of the reasonable value of $75 per month. That by reason of the premises libelant claims damages in the sum of $100,000.

The answer in effect is a general denial, so that it will not be necessary to particularize each paragraph thereof, the last of which contains a further answer and separate defense, alleging that any injuries received by Oliver K. Barge on board the SS "Anson Burlingame," which resulted in his death, were caused solely and proximately by his own negligence and carelessness, and did not result from the negligence

of any of the officers, agents or employees of said vessel.

From a perusal of the testimony in the above cause the court is satisfied the evidence shows that the carpenter Barge, while engaged in the performance of his regular duties, was ordered by the Chief Mate, who was then in command of the vessel, to go down to the main deck and lower the shovel which was a part of the equipment in question, and that in attempting to comply with the Chief Mate's order he suffered severe injuries which resulted in his death; that this was an unusual and dangerous piece of work for one who was apparently unfamiliar with this particular type of equipment, which the evidence shows was different from any other piece of machinery or equipment carried on the vessel. It appears, however, from the testimony, that the carpenter Barge, about one week before the fatal accident, did operate a bulldozer in helping other members of the crew in moving and putting in place certain equipment which had broken loose from lashings during a severe storm, and thus was able to be of assistance in this emergency. Later when the accident occurred Barge was ordered to operate a different machine, which was known as a caterpillar lift shovel and which was held in place on the forward main deck of the vessel near the mast house. The shovel was connected with the main body of the equipment by two arms and cables, was raised about halfway up and contained a quantity of rain water, and according to the testimony no difficulty was occasioned by either, but from the evidence given by the Chief Mate and seaman Akin it was the expressed wish of the former that the shovel be lowered to the deck and the water be removed. This work appears to have been wholly unnecessary; no harm was being done either to the shovel equipment or any other, or to the vessel in any way; it was an order given Barge by the officer in command requiring him to perform work outside of his employment and duties on shipboard, and from all the evidence submitted the court is satisfied that negligence should be imputed to the Chief Mate in requiring the performance of such an act under all the circumstances found to exist at the time. However, there is a claim and defense in this case by respondents of contributory or comparative negligence, and there appears to be some justification for such a claim. It seems clearly deducible from the evidence that Barge possessed some knowledge of mechanics and especially in respect to the operation of a bulldozer, and that he was able to set the two engines on the caterpillar lift in motion, and that in doing so, it seems probable no harm would have come to him if he had remained inside the cab of the lift where he was at the time he began manipulating the control levers, and where he should have remained while lowering the lift and shovel. The Mate and witness Leary tried to warn him of the impending danger by calling and shouting to him but he seemed not to understand what they meant. In view of the fact that Barge was able to start the engines from the inside of the cab where the control levers were located, the query naturally arises in this connection whether a reasonably prudent and careful person a moment later would apparently have deliberately placed himself in such an exposed position of grave danger to his life by standing outside the cab while the engines were in full operation and the lift and shovel were descending to the deck. It seems to the court that this question should have consideration in estimating and determining the degree of negligence for which respondents should be held liable in this case, and to that extent lessen the amount of damages that otherwise might have been awarded to libelant. Unquestionably the Chief Mate failed in his duty in not cautioning Barge and warning him in advance of the dangers that might be encountered in trying to handle this powerful piece of equipment which apparently he had never before attempted to operate.

The fact that Barge had driven a bulldozer over the deck a week before would not be sufficient in itself to justify the Mate in ordering him to operate this particular piece of machinery without any supervision or previous instruction or information given him as to the details and manner of its operation. But, however negligent the Chief Mate may have been, as before noted, it does not appear to the court that a

cautious and prudent person would have placed himself in such a position of danger while the machine was in full operation and when there doubtless would have been complete safety to his person had he remained in the cab and used ordinary care and caution. In other words, as it seems to the court from the evidence the Chief Mate was guilty of negligence which was the proximate cause of the accident, but the carpenter Barge was also guilty of comparative negligence proximately contributing to it. Socony-Vacuum Co. v. Smith, 305 U.S. 424, page 432, 433, 59 S.Ct. 262, 267, 83 L.Ed. 265: "We think that the consistent development of the maritime law in conformity to its traditional policy of affording adequate protection to seamen through an exaction of a high degree of responsibility of owners for the seaworthiness of vessels and the safety of their appliances will be best served by applying the rule of comparative negligence, rather than that of assumption of risk, to the seaman who makes use of a defective appliance knowing that a safe one is available. The power of the trial judge to guide and instruct the jury and his control over excessive verdicts afford as adequate a protection to owners as in any other case where the negligence of the seaman, whatever its degree, has contributed to an actionable injury. * * * Petitioner would have been entitled to a more specific instruction, if requested, as to the appropriate effect upon the amount of the verdict of the relative degrees of petitioner's and respondent's negligence if the jury should find that respondent had knowingly failed to choose an available safe method of doing his work."

Having resolved the facts as the court understands them to be, and having inquired into the law of the case as presented by counsel for the respective parties, the amount of damages to be awarded must now be determined. Was there conscious pain and suffering? Considering the distressing circumstances attending the accident and the fact that the victim was conscious for a certain period of time, for about an hour and ten minutes following the accident, the court believes the evidence would justify a finding in favor of libelant in this respect. The pecuniary loss to the widow is another item of damage to which the court has given attention in connection with the evidence and the arguments of counsel, and likewise the pecuniary loss to the two minor children. Also the court has seriously taken into account the degree in which the award of damages should be reduced because of the contributory negligence of the deceased. After due consideration the court is of the opinion that the award of damages on all three of the above issues should be fixed in the sum of five thousand dollars on each, fifteen thousand dollars in all, with costs of this action. Findings and conclusions may be submitted accordingly under the rule.