Harold J. LUKE, Appellant,

v.

Eustis VEAZEY, d/b/a Veazey Boat Rental Service et al., Appellees.

No. 18309.

United States Court of Appeals
Fifth Circuit.

May 4, 1961.

Rehearing Denied July 1, 1961.

**34**

Geo. M. Leppert, Frederick J. Gisevius, Jr., New Orleans, La., for appellant.

Joaquin Campoy, New Orleans, La., Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel, for appellees.

Before RIVES, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The Jean V was a converted Navy P T boat, owned by the appellee, Eustis Veazey, and manned by the appellant Harold J. Luke, as master, and Heuitte Howard, as engineer. It was engaged in doing seismographic work for the Marine Exploration Company. About eight o'clock on the morning of November 24, 1955, the Jean V with her two-man crew and four men of the so-called shooting crew of Marine Exploration Company aboard was standing by with her engine idling waiting for another vessel to appear. In the hold of the vessel was a quantity of explosives for use by the Exploration Company. Everyone aboard was in the pilothouse drinking coffee. Through a pilothouse door Howard, the engineer, saw smoke coming through a hatch and went below to investigate. A few minutes later Luke, the vessel's master, started to go below by a ladder leading from the pilothouse. He fell. He worked the rest of the day and the two following days. The next day, November 27, 1955, Luke worked on the boat with Veazey and Howard at Veazey's boatyard. On the following day Veazey fired both Luke and Howard because he was dissatisfied with the way they had maintained the vessel. A few days thereafter Luke reported to Veazey that he had been injured by his fall.

Luke brought suit under the Jones Act[1] and the general maritime law to recover damages for his injuries, asserting unseaworthiness of the vessel and negligence of its owner. A trial before a jury resulted in a verdict for the defendant Veazey. The appellant's motion for a judgment n. o. v. or for a new trial was denied. Judgment was entered on the verdict, and from that judgment this appeal was taken.

The appellant claimed that he was entitled to an instructed verdict on the issue of liability on the ground that the vessel was undermanned and hence unseaworthy. He contends that he had to run to get down the ladder or stairway and that he would not have had to run if the crew had been larger and if he had not run he would not have fallen. He testified that he went down the ladder facing away from it rather than facing it. There was no necessity shown for Luke going below at the particular time, either in haste or at leisure. The size of a Navy crew using the boat on patrol duty furnishes no measure for the crew needed for geophysical exploration work. No other showing of an insufficient crew was made. No showing was made that the appellant's injury would not have occurred, or the risk of injury would have been less, if the crew had been larger.

The appellant undertook to introduce evidence to show that the vessel was not maintained in compliance with Coast Guard Regulations and, he says, if he had been permitted to show violations of statutory requirements, it would have been established as a matter of law that the boat was unseaworthy and absolute liability would result. The evidence was excluded because the court concluded that the question had been raised too late. The appellee was prepared to contend that the vessel was not covered by the Coast Guard Regulations. The questions as to relevancy of the evidence and the effect of the Regulations were not considered by the trial court and need not now be considered by us. The question decided by the trial court, that is, the timeliness of the tender, is not apt to arise on another trial and need not be further considered here.

The specification of error most stressed by the appellant, and which we decide makes a reversal necessary, refers to one of the instructions. Among the instructions given, one which was requested by the appellee, is as follows:

"If you find that the ladder was too nearly vertical to provide a se-

1. 46 U.S.C.A. § 688.

cure foothold going down it facing away from the steps; that Plaintiff knew it was unsafe for him to descend it in that manner, especially with the vessel pitching and rolling in the seas; and that it would have been safe to descend the ladder facing it, if he had chosen to do so, then you must find for the defendant."

We agree with the appellant that this instruction is misleading and erroneous. This Court, in Tampa Inter-Ocean S. S. Co. v. Jorgensen, 93 F.2d 927, 930, approved an instruction "that if the plaintiff was furnished two methods of entering the 'tween deck space, one obviously safe and the other obviously unsafe, and if the plaintiff knew the safe method and notwithstanding chose the unsafe method, the defendant is not liable." The Jorgensen case was decided in 1939 and was subsequent to The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075, and Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082. A year after the Jorgensen case the Supreme Court handed down its decision in Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. There the district court had refused a request, in a Jones Act case, for an instruction that if the plaintiff could have performed his duty without using a defective step, he assumed the risk of injury from it. In affirming the refusal to give the requested instruction, the Supreme Court said:

"Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence however gross, is not a bar to recovery but only mitigates damages. There being no defense of assumption of risk where the seaman is without opportunity to use a safe appliance, it seems plain that his choice of a defective instead of a safe one, resulting in injury, does not differ in either the quality of the act or in its injurious consequences, in any practical way, from his correspondingly negligent use of a safe or any unsafe appliance, where its use has contributed to an injury resulting from a breach of duty by the owner. [Citing cases]. In either case the seaman's negligence is a contributing cause of his injury, without which the shipowner would be liable to the full extent of the damage." 305 U.S. 431–432, 59 S.Ct. 266.

Under this doctrine the challenged instruction is improper whether it be regarded as one on contributory negligence or assumption of risk, or both. In a more recent case it is said, "Although proof of negligence is an essential to recovery under the Jones Act, [Citing cases] contributory negligence and assumption of risk are not available defenses. The admiralty doctrine of comparative negligence applies." Jacob v. City of New York, 315 U.S. 752, 62 S. Ct. 854, 855, 86 L.Ed. 1166. See 1 Benedict on Admiralty, 6th Ed. 50 et seq., § 25; Gilmore and Black, Admiralty 298 et seq., §§ 6–27; I Norris, Law of Seamen, 364 et seq., §§ 684, 685, Norris, Maritime Personal Injuries, 97 et seq., §§ 40, 41.

The appellee recognizes that the challenged instruction is not an accurate statement of the applicable law. It calls attention to the principle that instructions are to be considered as a whole and that specific instructions are not to be considered out of context. He points out that the court covered, in its charge, the doctrine of comparative negligence. We do not think it can be inferred that the jury did not give effect to the instruction or that it might not have been the basis for the verdict.

The appellee makes the observation that the verdict may have been based upon a jury finding that the appellant did not fall, or that he fell but was not injured, or that his fall resulted solely from his own carelessness, or that no negligence of the appellee or unseaworthiness of his boat contributed to the appellant's fall. We shall not join the appellee in

these speculations. If we were to speculate we might surmise that the jury may have found that the appellant knew it was unsafe for him to go down the ladder facing forward and knew he could safely descend facing the ladder, and hence a verdict must be for the appellee regardless of whether the negligence of the appellee or the unseaworthiness of the Jean V was a causal factor contributing to the appellant's injury. Such a verdict, and a judgment on it, would not stand.

The erroneous instruction requires a new trial, for which the judgment of the district court is reversed and the cause is remanded. The other matters raised are not such as are likely to recur on another trial and will not be discussed.

Reversed and remanded.