620 F.Supp. 1480 (1985)
Howard D. VALENTINE, Plaintiff,
v.
ST. LOUIS SHIP BUILDING COMPANY and Alter Barge Line, Inc., Defendants.
No. 84-117C(6).
United States District Court, E.D. Missouri, E.D.
November 7, 1985.
*1481 Gregory D. O'Shea, St. Louis, Mo., for plaintiff.
Hubert I. Binowitz, Goldstein & Price, Michael D. O'Keefe, Dan Ball, Thompson & Mitchell, St. Louis, Mo., for defendants.

MEMORANDUM OPINION
GUNN, District Judge.
This matter is before the Court for a decision on the merits following a trial to the Court. Plaintiff brought this action under general admiralty law and under the Jones Act, 46 U.S.C. § 688, for personal injuries sustained on February 12, 1982 on the deck of a barge owned by defendant Alter Barge Line, Inc., while in the employment of defendant St. Louis Ship Building Co. After consideration of the testimony and exhibits introduced at trial, and parties' briefs and post-trial material, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52, Fed.R.Civ.P.

FINDINGS OF FACT
Plaintiff was an employee of defendant St. Louis Ship Building Co. (St. Louis Ship). On the night of his injury, plaintiff was working as a deckhand on St. Louis Ship's vessel, the MARTY S.
The night of February 12, 1982 was bitterly cold, and the Mississippi River was clogged with ice. The KATHY ELLEN, a vessel owned by defendant Alter Barge Line, Inc. (Alter), apparently ran onto some ice and sustained extensive damages to her hull, so much so that the vessel took on water in such substantial quantities that she began to list. The MARTY S. was called upon to aid in getting the KATHY ELLEN to St. Louis Ship's dry dock that was on the Missouri side of the Mississippi River at St. Louis.
As the MARTY S. was pushing the KATHY ELLEN into St. Louis Ship's dry dock, plaintiff stepped from the bow of his vessel to the stern of the KATHY ELLEN and made his way forward to assist in securing the disabled vessel to the dry dock. When he reached the bow of the KATHY ELLEN, plaintiff's foreman, Joseph Perry, was present handling a line on the vessel. Plaintiff was handed the line to assist with the docking procedure. During the course of the procedure, plaintiff stepped backward and fell into a partially opened hatch on the bow of the KATHY ELLEN. As a result of the fall, plaintiff sustained injuries to his neck, shoulder, ribs and index finger. He was lifted from the hatch and taken to shore and ultimately to a hospital for treatment.
The Court's findings of fact and conclusions of law render details concerning the extent of injuries and their disabling effect inconsequential to the issues of the case.
According to the credible evidence, which comports with the defendants' version of what took place at the time of the accident, the KATHY ELLEN was incapacitated and its engines were not running. Running power was provided by the MARTY S. which was pushing the crippled vessel. According to Randy Elder, the KATHY ELLEN's pilot and an employee of defendant Alter, the KATHY ELLEN's generators were being utilized and its running lights and two forward spotlights directed to the bow were on, providing a substantial amount of light on the bow where the hatch was located. Lights from St. Louis Ship's dry dock also illuminated the bow of the KATHY ELLEN.
Robert Vencion, engineer for the KATHY ELLEN, was on watch at the time of the accident. He and Rusty Gares, a deckhand on the KATHY ELLEN, had left the boat's cabin and were on the bow when plaintiff, who was also on the bow, asked Vencion for a tie line to secure the boat to the dry dock. Gares went down to the hold of the vessel to obtain the rope which was stored there to preserve it from the elements. The hatch lid on the bow was opened and the rope handed through the opening to plaintiff. The lid was then laid over the hatch and partially covered the *1482 opening. This was done within plaintiff's presence.
The hatch lid was necessarily kept ajar so that the line from the hold could be passed through it. Perry testified that a safety ring would not be placed around an open hatch under the conditions existing in this case, as such a device would interfere with the necessary use of the hatch and individuals coming in and out of the hold. Plaintiff, Perry and Gares, who had come back on deck, all handled the line in an effort to secure the stricken vessel to the dry dock.
Lights from the dry dock, the KATHY ELLEN's spotlights directed on the bow of the vessel, together with its running lights and a light from within the hold shining through the hatch opening provided bright illumination to the bow and hatch for all the workers, including plaintiff, while they were busy at their chores. Perry, Vencion, and Gares testified that they could clearly see the condition of the hatch and lid.
Both Vencion and Gares noted a strong odor of alcohol on plaintiff's breath as they worked with him. Vencion observed that plaintiff appeared to be unsteady on his feet and under the influence of alcohol. Plaintiff denied that he had been drinking.
Vencion and Perry both warned plaintiff to be careful around the hatch opening, as the lid was not secure due to the line having to be pulled through it. Gares, who was standing next to plaintiff, heard the admonitions concerning need for caution around the hatch. Plaintiff acknowledged to both Vencion and Perry that he heard and understood their cautionary advice.
Vencion and Gares returned to the cabin to warm themselves. Perry heard an exclamation from plaintiff, turned and saw him half in and half out of the hatch. Perry then pulled plaintiff out and laid him on the deck. Plaintiff was conscious when Perry saw and tended to him. Vencion and Gares returned to the bow when they heard of plaintiff's accident and assisted getting him to shore.
Plaintiff's testimony was to the contrary: that the lighting on the KATHY ELLEN was very poor, that he had "no knowledge of any lighting on the bow of the vessel or around the hatch." He further testified that Perry was the only person on the bow of the boat with him and that he was given no warning of the open hatch. This is, of course, directly contrary to the credible testimony of Perry, Vencion and Gares. The Court specifically finds the testimony of plaintiff not to be credible.
A former employee of St. Louis Ship, Don Goodson, testified that he had been on the dry dock on the night of plaintiff's accident and acknowledged that two of the dry dock's ten floodlights were out. These two lights were furthest distant from the bow of the KATHY ELLEN. It is the Court's finding that Mr. Goodson's testimony is immaterial to the case.
In accordance with the substantial weight of the credible evidence, it is the Court's finding that the bow and hatch opening of the KATHY ELLEN were well lighted and that the plaintiff was aware of the opening and had been given ample warning about it. Further, under the circumstances of its necessary use, the hatch had to be open, and no safety device could be placed about it.

CONCLUSIONS OF LAW
Plaintiff's cause of action against Alter Barge Line, Inc. is based on the doctrine of unseaworthiness and on negligence under general maritime law. The Court has jurisdiction over this matter under its admiralty jurisdiction. 46 U.S.C. § 740. The general maritime law doctrine of unseaworthiness allows a seaman to recover against a shipowner for personal injuries proximately caused by a condition which renders the vessel "not reasonably fit for her intended purpose." Usner v. Lukenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) (Usner). See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) for an historical analysis of the unseaworthiness doctrine. See also G. Gilmore & C. *1483 Black The Law of Admiralty § 6-38 (2nd ed. 1975).
The shipowner's liability for failure to furnish a seaworthy vessel is a species of liability without fault and is not limited by conceptions of negligence. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Allegation of a single, isolated incident of operational negligence gives rise to a cause of action based on negligence but not to one based on unseaworthiness. Usner, 91 S.Ct. 514 (shipowner not liable for longshoreman's injuries caused by a sling which one of his co-workers negligently lowered too fast and too far); Campbell v. Seacoast Products Inc., 581 F.2d 98 (5th Cir.1978). Contributory negligence is not an absolute defense in admiralty cases founded upon unseaworthiness or negligence, but rather it is a basis to apportion damages. American President Lines, Ltd. v. Welch, 377 F.2d 501 (9th Cir.1967).
Plaintiff has made three allegations of unseaworthiness and negligence: (1) that the deck was inadequately lighted, (2) that the hatch was left open on the deck without a proper guard, and (3) that he was not warned of this condition.
The Court recognizes that a vessel would be unseaworthy if the lighting were "so inadequate that it was not fit for the work at hand." Theodories v. Hercules navigation Co., 448 F.2d 701, 705 (5th Cir.1971). In the present case, however, the Court concludes, based on its findings of fact, that the deck of the KATHY ELLEN was adequately lighted for the docking procedure underway. The Court further concludes, based on its finding that plaintiff was warned of the open hatch, that no liability can attach on that ground. Finally, the Court concludes that under the facts of this case it was not negligent for the hatch to be open and without a railing, and that such condition did not render the vessel unseaworthy. These conclusions are based on the Court's findings that the reason the hatch was open was to obtain rope needed for the docking procedure from the hold onto the deck, one of the intended uses of the hatchway, and that under such circumstances it was not customary nor practicable to put a railing around the opening. The Court also finds that plaintiff had assisted in bringing the rope up through the hatchway and therefore knew of its open condition, and that he was repeatedly warned to watch out for it. See Theodories v. Hercules Navigation Co., 448 F.2d 701, finding no liability on the part of the shipowner under similar facts. See also Ove Tysko v. Royal Mail Steam Packet Co., 81 F.2d 960 (9th Cir.1936) (shipowner is not negligent in permitting hatchway to remain open where there is a custom to leave it open under circumstances of case).
Plaintiff's cause of action against St. Louis Ship Building Co. is brought under the Jones Act, 46 U.S.C. § 688, which provides that a seaman may maintain an action for damages against his employer for personal injuries sustained in the course of his employment. The Act incorporates the provisions of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, giving seamen the same rights of action as railroad employees. An action under the Jones Act must be premised on the defendant's negligence. De Zon v. American President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943); Joyce v. Atlantic Richfield Co., 651 F.2d 676 (10th Cir.1981). As in cases under general admiralty law, contributory negligence is not a bar to recovery but only mitigates damages. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); Drackenberg v. Canal Barge Co., 571 F.2d 912 (5th Cir.1978).
The Court's conclusions above as to the adequacy of lighting, giving of warnings and lack of negligence in the open condition of the hatch are applicable to defeat plaintiff's Jones Act claim against St. Louis Ship Building Co. Simply put, there is no negligence by defendants which can be attributable to plaintiff's injury.
Judgment is accordingly entered in favor of both defendants and against plaintiff.