## VILESKI v. PACIFIC-ATLANTIC S. S. CO. et al.

No. 11470.

Circuit Court of Appeals, Ninth Circuit.

Aug. 29, 1947.

Gladstein, Andersen, Resner & Sawyer, and Herbert Resner, all of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal. (John H. Black, Edward R. Kay, Henry W. Schaldack, Hoge, Pelton & Gunther, and Franklin C. Latcham, all of San Francisco, Cal., of counsel), for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

**554**

DENMAN, Circuit Judge.

Appellant Vileski, libelant below, and hereafter called libelant, at pertinent times was a marine fire and boiler man acting as a junior engineer under waiver of license on the S. S. "Iran Victory." He libeled the United States and others under the maritime law for maintenance and under the Jones Act, 46 U.S.C.A. § 688, for personal injuries. The Jones Act liability is alleged to arise from a negligent failure to furnish libelant a safe place to work in the fire room of the steamer while he was repairing certain of the relief valves over her boilers whereby he was caused to fall and bruise his left leg.

The action was dismissed as to all respondents except the United States. The testimony of all witnesses was given orally. The district court found against libelant on the negligence issue and awarded $164 for maintenance, an award not here questioned. This appeal is from the decree in favor of the United States with respect to the claimed negligence. Its liability is not contested if we hold libelant has sustained his burden of proof on the remaining issue tendered.

■ While, as libelant contends, an admiralty appeal is a trial de novo, "Where all of the evidence is heard by the trial judge and the question is one of credibility of witnesses on conflicting testimony, the presumption [that the findings of the district court are correct] has very great weight." The Ernest H. Meyer, 9 Cir., 84 F.2d 496, 501, certiorari denied Hammond Lumber Co. v. Braughton & Wiggins Nav. Co., 299 U.S. 600, 57 S.Ct. 193, 81 L.Ed. 442; The Melody, 9 Cir., 157 F.2d 448; Tawada v. United States, 9 Cir., 162 F.2d 615.

■ Since all three of the witnesses on the tendered issues were heard by the district court, the question here is whether there is evidence which will sustain the district court's finding that libelant had not maintained his burden of proof as to the charged negligence.

In February 1945, while the steamer was moored in the harbor, libelant was ordered by the first assistant engineer to repair some "relief valves" for the boilers. The repair was a customary two-hour port job done as the boiler pressure diminished. Libelant contends this order required him to work in the unsafe place where he received his injury.

The relief valves were over the tops of the boilers. On each side of the boilers were installed the customary hand rails about three feet above the flooring. They were of smooth piping about half an inch in diameter. They served the normal ship's function of affording the fire room crew an appliance upon which they could take hold when the vessel is working in a sea.

The hand rails were at a convenient distance below the valves for a man, taking the chance of slipping on their smooth surface, to reach the valves for repairing them. Libelant admits that it was negligence so to use the hand rails. He also admits he attempted to repair the valves while standing on the hand rail and as a consequence was injured.

There is testimony that the proper method of so repairing the valves was not to stand on the smooth hand rail—that is convert it from a necessary hand rail into a dangerous foot rail—but to install on the rail a staging upon which to stand in making the repairs. It consisted of a 2 x 12 inch plank lashed to the hand rail, of which there was an abundant supply on the ship available to libelant. At the time of libelant's accident such a board was on the other side of the fire room for such use by another unlicensed junior engineer, who failed to use it but took the same chance of slipping as did libelant. It is not contended that the lashing of such a board to the hand rail would consume so much time that the repairs could not be made in the usual two-hour period.

■ Libelant contends that the district court erred in not finding that he had no authority over the fire room wipers to order them to bring him the board and lash it to the rail and hence that the order of the first assistant engineer to repair the valves was in effect an order to libelant to use the hand rail and take the chance of slipping. It is admitted that libelant gave no orders to any of his unlicensed fire room personnel to install the staging.

Libelant signed articles and sailed on the "Iran Victory" as a junior engineer, receiving the compensation of that office and in all respects acting as such officer and living in the officers' quarters. He had had two years' experience in the Navy and three years as a merchant seaman, holding a ticket as a boiler and fire man. In the wartime shortage of man power the requirement of license to hold such office, as here, was waived in many cases.

There is testimony from which the court could infer that the wipers in the steamer's fire room were under libelant's command for such fire room service. Libelant stated that if he needed a ladder to reach the valves he would order a wiper to bring it. Since the district judge could infer that libelant had such power over the unlicensed personnel, it is immaterial what status the unlicensed junior otherwise occupied in the steamer's hierarchy of command. His command was at least as great as a boatswain over his crew in launching and rowing a boat.

It is thus clear that the district court was entitled to infer that the only negligence causatively contributing to libelant's injury was in libelant in choosing to work on the rail, installed for an entirely different purpose, and in failing in his duty to install the convenient staging. Drain v. Shipowners & Merchants Towboat Co., 9 Cir., 149 F.2d 845, 846.

The hand rail for use in heavy seas is no more defective or dangerous per se than are the ship's sides to keep out such seas. As well could it be said of a deck crew, ordered to paint the ship's sides, who chose to do so hanging by individual ropes lashed to the ship's rail instead of using the available customary staging and rigging for that purpose, that they were ordered to work in a dangerous place. The contrary is held in Field v. Waterman S. S. Corp., 5 Cir., 104 F.2d 849; cf. Patton-Tully Trans. Co. v. Turner, 8 Cir., 269 F. 334; Asprodites v. Standard Fruit & Steamship

Co., 5 Cir., 108 F.2d 728, certiorari denied 310 U.S. 642, 60 S.Ct. 1089, 84 L.Ed. 1410; Brittingham, v. Ore. S. S. Corp., 4 Cir., 62 F.2d 616, 617; Roberts v. United Fisheries Vessels Co., 1 Cir., 141 F.2d 288.

Libelant relies upon Socony Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265, and similar cases. In that case the ship supplied a defective step for an oiler to reach and touch a propeller shaft bearing at twenty minute intervals to determine if it was overheated. He used the step and because of the defect he fell and was injured. There was evidence that the oiler's superior officers knew of the defect, which the oiler had reported. There also was evidence that the oiler could have reached the shaft without use of the step. The court held that it was negligence on the part of the ship to supply a defective step for the very purpose of reaching the shaft bearing and, while it was negligence on the part of the oiler to use it, it was the combined negligence of both oiler and shipowner which caused his injury and the admiralty principle of comparative negligence applied.

Similarly of the other cases cited by libelant,[1] the place in which the seaman or officer was required to work was per se unsafe or the appliance supplied by the ship was defective or a necessary appliance was not supplied, or the specific order to the seaman was to do something in an unsafe way. None is contra to the instant case where the owner is not chargeable with any of such failures or wrongful orders.

■ Libelant on this appeal seeks to raise a new issue, namely, that the cure of his injury is not sufficient and that he is entitled to the cost of services of a physician in addition to the cure undertaken by the United States Marine Hospital at San Francisco. No such issue is tendered in the libel. Libelant's counsel in his opening statement confined the issue to liability for maintenance and to the claimed negligence. No finding as to cure was made by the

[1] Matson Navigation Co. v. Hansen, 9 Cir., 132 F.2d 487; Armit v. Loveland, 3 Cir., 115 F.2d 308; Krey v. United States, 2 Cir., 1942 A.M.C. 19; The Diamond Cement, 9 Cir., 95 F.2d 738, 123 F.2d 1008, 1938 A.M.C. 757; Reskin v. Minn. Atlantic Transit Co., 2 Cir., 107 F.2d 743; Fegan v. Lykes Bros. S. S. Co., Inc., 198 La. 312, 3 So.2d 632, 1941 A.M.C. 1154; Cleveland-Cliffs Iron Co. v. Martini, 6 Cir., 96 F.2d 632.

district court. No amendment to the libel is here sought. Evidence of a physician witness of what further treatment libelant might require was relevant to the issue of maintenance. The physician testified to its cost but admitted the services well might be performed by the marine hospital. The libelant is not entitled so to mend his hold even in an admiralty appeal.

The decree is affirmed.