[L. A. No. 21215. In Bank. May 9, 1950.]

EDITH G. ROUCHLEAU, as Administratrix, etc., Respondent, v. GUY H. SILVA, Appellant.

Lasher B. Gallagher for Appellant.

Harold P. Lasher and Don L. Yale for Respondent.

SHENK, J.—This is an appeal by the defendant from a judgment for the plaintiff in an action for recovery under the Jones Act (title 46 U.S.C.A., § 688).

The plaintiff is the widow of James Louis Rouchleau who, in his lifetime, was employed as a seaman on the commercial fishing vessel the "Emma R.S." owned by the defendant. While engaged in cleaning up activities after unloading fish in San Diego Harbor, Rouchleau fell from a plank which was an appliance of the vessel into an empty fish hold and died two days later. The plaintiff sought $25,000 general damages plus funeral expenses. Trial without a jury resulted in a judgment for $17,000.

The defendant first contends that the complaint does not state a cause of action under the Jones Act. In personal injury and death cases that act makes applicable to seamen the provisions of the Federal Employers' Liability Act (45

U.S.C.A. § 51 et seq.) Section 51 of that act extends a right of action to the plaintiff widow as the personal representative of the deceased seaman if his death has resulted from injuries in whole or in part due to defendant's negligence, or by reason of any defect or insufficiency, due to the defendant's negligence, in the boat's appliances. It appears to be the defendant's contention that there is no allegation in the complaint other than by way of legal conclusion that an alleged failure of the defendant or an alleged defect or insufficiency of the appliance was due to his negligence. The complaint, however, does allege probative facts bearing on the conclusions of the defendant's failure, neglect and breach of duty. The allegations are sufficient to present the question whether the defendant negligently failed to supply a reasonably safe appliance. (See *Brown* v. *Western R. Co.*, 338 U.S. 295 [70 S.Ct. 105, 94 L.Ed. ——], decided November 21, 1949.) The trial proceeded in conformity with the allegations and on the theory of negligence under the Jones Act. No demurrer was interposed. ■ The findings of the trial court were based on the determination that the injuries resulting in death were in part caused by the negligence of the defendant in providing an unsafe appliance. The defendant was not misled, and if there was lack of form in the drafting of the complaint the defects were cured by the trial on the real issue without objection on the ground that the complaint insufficiently tendered the issue of negligence under the Jones Act, and by the specific finding of negligence based on the evidence relevant to that issue. (*Colbert* v. *Colbert*, 28 Cal.2d 276, 281 [169 P.2d 633].)

■ The next question is whether there is sufficient evidence of the negligence which is a material element of the plaintiff's case. (*Showalter* v. *Western Pac. R. R. Co.*, 16 Cal. 2d 460, 471 [106 P.2d 895] ; *Vojkovich* v. *Ursich*, 49 Cal.App. 2d 268, 273 [121 P.2d 803].) In presenting this question the defendant contends that, following the admiralty practice, he is entitled to a trial de novo in the reviewing court. It may be assumed that parties to an action in a state court are entitled to the rights afforded them under federal law in admiralty matters. (See *Garrett* v. *Moore-McCormack*, 317 U.S. 239 [63 S.Ct. 246, 87 L.Ed. 239] ; *Intagliata* v. *Shipowners & Merchants Towboat Co., Ltd.*, 26 Cal.2d 365 [159 P.2d 1].) But it does not follow that if there is substantial credible evidence which supports the trial court's findings unaffected by error, this court will not affirm the judgment. The decisions,

including those relied on by the defendant, indicate that the findings supported by competent evidence should not be upset except for manifest error or unless they are clearly wrong. (*Davidson Steamship Co.* v. *United States,* 205 U.S. 187, 191 [27 S.Ct. 480, 51 L.Ed. 764]; *Crist* v. *United States War Shipping Administration,* 163 F.2d 145, 146; *Smrekar* v. *Bay & River Nav. Co.,* 69 Cal.App.2d 654, 657 [160 P.2d 85], cert. denied, 326 U.S. 782 [66 S.Ct. 338, 90 L.Ed. 473]; *Macomber* v. *De Bardeleben Coal Co., Inc.,* 200 La. 633, 634, 649 [8 So.2d 624], cert. denied, 317 U.S. 661 [63 S.Ct. 61, 87 L.Ed. 532].)

The following appears by witnesses who testified at the trial and from the defendant's deposition:

The defendant had owned and captained the vessel since 1928 when the deceased entered his employ. The vessel was taken by the Navy during the late war and was thereafter returned to the defendant. The plank in question was not a part of the equipment until the Navy took the boat and made some alterations including the addition of a raised deck. The defendant retained the alterations, and the plank as an appliance of the vessel. The trip at the close of which the injury occurred was the second for the deceased after the return of the boat to the defendant.

The plank, 4 feet long, 12 inches wide and 2 to 3 inches in thickness was maintained as a catwalk between the raised deck forward and a bait tank aft. The level of the raised deck was about one foot above the top of the bait tank. Between the raised deck and the bait tank was a covered opening to a fish hold below. The plank was used as a bridge over the hold opening between the raised deck and the bait tank. It was not fixed, but movable, and was held in place by cleats on the underside. There were neither cleats nor covering on the upper surface. Ordinarily a skiff adjoined the plank in place and afforded some support in its use. There was no other handhold or railing. During fishing operations the plank was used in getting to the bait tank from the pilot house which was forward of the raised deck. During unloading operations it was necessary to remove the plank and the skiff in order to bring up the fish from the hold below through the opening under the plank. It was also in evidence that the plank was customarily used by all members of the crew at their own convenience at any time at sea or in port. Another means of access to the bait tank was afforded by a companionway be-

tween the upper and lower decks and by a 6-foot ladder to the top of the bait tank. The men had no specific instructions about the use of either way and whenever they had occasion to go to the bait tank they usually crossed on the plank instead of using the companionway and ladder.

On October 4, 1945, when the trip started, the deceased signed on as a seaman. While at sea the defendant sustained an injury to his hand which required that he be taken by airplane to the mainland. Before he left an agreement was signed by the crew that the deceased would act as master until such time as the defendant was physically able to return to the boat. The defendant met the boat on November 13th after it returned to port and proceeded with it from the inner harbor to where it was docked. After stopping at the Custom House for an hour the vessel tied up at Van Camp's dock, where it was unloaded the following day. The defendant came on board again during or after the unloading. He looked into the well between the bait tank and raised deck and saw that it was empty. He made no inspection of the plank at any time. The decedent Rouchleau and another seaman were engaged in washing down the equipment, bait tank, wells and decks. The plank was put in place during or at the close of the cleaning operations and was in a wet condition. The skiff was still in the water. The deceased was in the act of stepping from the bait tank to the plank. He had one foot on the plank and was about to take a step forward when he lost his footing and fell into the open well below, sustaining the injuries from which he died.

The court found negligence on the part of the defendant in failing to maintain the appliance in a reasonably safe condition. Responsive to the issues raised by the answer the court found that the decedent's injuries were in part the result of his own negligence. From the evidence of deceased's earnings the conclusion was drawn that the plaintiff was damaged in the sum of $30,000, but that, because of the factor of contributory negligence, the defendant was entitled to have the judgment reduced to $17,000.

█ In support of his claim that the evidence does not support a finding of negligence the defendant relies on his own testimony that the plank was restricted to use as a catwalk when the skiff was in place. The evidence is clear, however, from the defendant's admissions and from independent evidence that the plank was in use as here described at all times and under all circumstances whenever the men had occasion

to go between the bait tank and the raised deck. The defendant's endeavor, on interrogation by his own counsel, to cure the effect of his admitted general use of the plank is unavailing. The conclusion that the plank was not reasonably safe for such use has support in the evidence.

■ The term "negligence" as used in the Jones Act is given a liberal interpretation, and includes any conscious or careless breach of the employer's obligation to provide for the safety of the crew. (*Koehler* v. *Presque-Isle Transp. Co.*, 141 F.2d 490, 491.) ■ An established duty falling on employers of seamen is that they shall use due diligence to provide their employees with a safe place in which to work, and in this respect a higher standard is required of them than of employers of workers on shore. (*Socony-Vacuum Oil Co.* v. *Smith*, 305 U.S. 424, 428 [59 S.Ct. 262, 83 L.Ed. 265]; *Armit* v. *Loveland*, 115 F.2d 308, 311.) The issues here were addressed to a breach of that duty. Measured by the accepted standard the record discloses ample evidence that the defendant negligently failed to provide reasonable safeguards in the use of the plank at all times when it might be expected to be in use.

■ It is contended that it was the decedent's duty to go the safer way by using the ladder and that his failure to do so was the sole proximate cause of his injuries. The defendant relies on cases to the effect that if two ways are available, one safe and the other obviously unsafe, the employee's choice of the dangerous way is at his peril if the difference is known to him. (*Hardie* v. *New York Harbor Drydock Corp.*, 9 F.2d 545, 546; *Tampa Interocean S. S. Co.* v. *Jorgensen*, 93 F.2d 927, 929; *Meintsma* v. *United States*, 164 F.2d 976.) As indicated in these and other cases (*Carlson* v. *United States*, 71 F.2d 116, 117, and *Vileski* v. *Pacific-Atlantic S. S. Co.*, 163 F.2d 553), the rule is applicable when it is shown to be the duty of the employee to use the ordinary and safe way rather than one intended for an entirely different purpose. Here it was shown that the plank was the ordinary way; that it was expected that the men would use it at any time for the purpose of going across the four-foot space between the bait tank and the raised deck; and that during cleaning up activities after unloading it was the regular practice for the plank to be in place and in use while the skiff was still in the water.

■ The defendant defers to facts which he claims support his defense of assumption of risk, and complains that the court omitted to make findings thereon. It has been said that this

defense is peculiarly inapplicable to suits by seamen to recover for negligent failure to provide a seaworthy ship and safe appliances. The facts referred to as well as those material to the defense of contributory negligence, bear only on apportionment or mitigation of the damages under the applicable doctrine of comparative negligence. (*The Arizona* v. *Anelich,* 298 U.S. 110 [56 S.Ct. 707, 80 L.Ed. 1075] ; *Beadle* v. *Spencer,* 298 U.S. 124 [56 S.Ct. 712, 80 L.Ed. 1082] ; *Socony-Vacuum Oil Co.* v. *Smith, supra,* 305 U.S. 424.) The record shows that the trial court dealt with these matters in ordering the damages mitigated to the extent of nearly one-half. On the facts of this case and the authorities cited the defendant received the consideration to which he was entitled under the Jones Act.

█ The defendant asserts that he was not the person responsible. He urges that the sole responsible person was the decedent himself who was the acting master and that the duty devolved upon him to use due care in furnishing reasonably safe appliances. In this connection an application was filed in this court to introduce documentary evidence consisting of a photostatic copy of the United States Coast Guard Inspector's certificate of the crew list of the Emma R. S. dated November 11, 1945, reporting James Rouchleau as master and Guy H. Silva as absent from the crew. It is not disputed that the decedent was acting master at that time. Relying on that fact the defendant cites *United States Steel Products Co.* v. *Noble,* 10 F.2d 89, to the effect that the employee charged with the duty of keeping essential appliances in a safe condition cannot make his neglect of that duty the basis of a claim against the employer. The doctrine is inapplicable here. The record fails to show that the decedent undertook to act as temporary master with the equipment in a condition other than as supplied by the defendant. There was no special duty enjoined upon him within the meaning of the doctrine relied on by the defendant. At all times the decedent was in the defendant's employ as a member of the crew and under the facts of this case he was entitled to the benefits of the statute whether acting in the capacity of seaman or master. (*Warner* v. *Goltra,* 293 U.S. 155, 162 [55 S.Ct. 46, 79 L.Ed. 254].) Furthermore the agreement appointing the decedent to act as master was to expire when the defendant was physically able to return to the boat. The defendant apparently was physically able for he returned while the vessel was in the harbor on the day prior to unloading. The court is not bound by his

declarations that he did not come on board to take command nor is it material that he actually did not resume command.

It is contended that the finding of damages in the sum of $30,000 before apportionment is against law because in the complaint the plaintiff prayed for $25,000. But there was no award of damages in excess of the sum asked, and it may not be said that the amount was excessive or not justified by the evidence.

The application to introduce documentary evidence is denied and the judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.