[Civ. No. 43709. Second Dist., Div. Four. Jan. 8, 1975.]

JAMES CATANIA, Plaintiff and Appellant, v.
HALCYON STEAMSHIP COMPANY, Defendant and Respondent.

## COUNSEL

Kessler & Drasin and Arnold Kessler for Plaintiff and Appellant.

Samuel A. Keesal, Jr., and Forest L. Elliott, Jr., for Defendant and Respondent.

## Opinion

**COLE, J.**\*—Plaintiff, a seaman, injured his finger while working aboard defendant's vessel. He brought this action, seeking damages under a theory of negligence pursuant to the Jones Act (46 U.S.C. § 688) and under a theory of unseaworthiness pursuant to general maritime law. The trial court granted defendant's motion for a directed verdict insofar as the unseaworthiness count was concerned. The jury returned a verdict for plaintiff under the Jones Act count. The trial court granted a motion for judgment notwithstanding the verdict, and plaintiff appealed the judgment. We reverse.

### The Motion Was Granted In Time

■ We reject plaintiff's argument that the trial court lacked jurisdiction to grant this motion. In making this argument plaintiff relies upon that portion of section 629 of the Code of Civil Procedure which states ". . . . The power of the court to rule on a motion for judgment notwithstanding the verdict shall not extend beyond the last date upon which it has the power to rule on a motion for a new trial. . . ." A motion for a new trial must be ruled upon within 60 days from and after the mailing of notice of entry of judgment. (Code Civ. Proc., § 660.)

Such notice was mailed in the present case on April 17, 1973. On May 4, 1973, the court filed with the clerk a signed "Memorandum of Opinion" which, after setting forth its reasons for the action, stated "Motion for judgment notwithstanding the verdict, granted." A minute order to the same effect was made.[1] On July 9, 1973, more than 60 days after mailing of the notice of entry of judgment concerning the jury verdict, the judgment in favor of defendant notwithstanding the verdict was signed. This last judgment was entered on July 10, 1973. Section 629 also provides that "The court, before the expiration of its power to rule on a motion for a new trial, either of its own motion, after five days' notice, or on motion of a party against whom a verdict has been rendered, shall render judgment in favor of the aggrieved party notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made."[2]

---

\*Assigned by the Chairman of the Judicial Council.

[1] The order appears in the superior court file, which we have examined.

[2] The section also states insofar as is relevant here "A motion for judgment notwithstanding the verdict shall be made within the period specified by Section 659 of this code in respect of the filing and serving of notice of intention to move for a new trial. The making of a motion for judgment notwithstanding the verdict shall not extend the

Plaintiff relies upon the phrase "shall render judgment" to support his argument that the trial court did not meet the statutory deadline. The reliance is misplaced.

As can be seen (fn. 2) section 629 has several provisions dealing with the *time* within which action must be taken in connection with the granting of a motion for judgment notwithstanding the verdict. Thus the court "shall not rule upon the motion" until the time for serving and filing a new trial motion has gone by. If the latter motion is filed, both it and the motion for judgment notwithstanding the verdict shall be ruled upon at the same time. And, as quoted above, the court's power to rule on the motion for judgment notwithstanding the verdict shall not extend beyond the last date for ruling upon new trial motions. This last provision was added to section 629 in 1951. In 1961, the statute was again amended to relieve a party of the burden of reserving the right to move for a new trial, and of making the two motions in the alternative, at the peril of losing the right to move for a new trial in the absence of such reservation. (*Espinoza* v. *Rossini* (1966) 247 Cal.App.2d 40, 45 [55 Cal.Rptr. 205].) At the time of the 1961 amendments the provisions requiring the court to wait for the time to move for a new trial, and then to rule upon both motions at the same time were added. The result is that the procedure for new trials, and for judgments notwithstanding the verdict was "synchronized . . . containing the same time periods, time limits and consequences . . . ." (*Espinoza* v. *Rossini, supra,* at p. 46.)

While section 629 deals explicitly with the *time* for ruling on the motion, unlike section 660 relating to new trials, it does not deal as explicitly with what constitutes a ruling. Under section 660 a new trial motion is determined either when an order ruling on the motion is entered in the permanent minutes of the court or is signed by the judge and filed with the clerk. We hold that, to maintain the synchronization of "time periods, time limits and consequences" a decision of the trial court which is entered in the permanent minutes, or an order signed by the judge and filed with the clerk constitutes the ruling upon a motion for

time within which a party may file and serve notice of intention to move for a new trial. The court shall not rule upon the motion for judgment notwithstanding the verdict until the expiration of the time within which a motion for a new trial must be served and filed, and if a motion for a new trial has been filed with the court by the aggrieved party, the court shall rule upon both motions at the same time. The power of the court to rule on a motion for judgment notwithstanding the verdict shall not extend beyond the last date upon which it has the power to rule on a motion for a new trial. If a motion for judgment notwithstanding the verdict is not determined before such date, the effect shall be a denial of such motion without further order of the court."

judgment notwithstanding the verdict which must be made within the prescribed time limits.

The fact that a formal judgment comporting with the court's decision to grant a motion for judgment notwithstanding the verdict is not signed or filed until after the expiration of the 60-day period does not alter the situation. It is true that section 629 states that within the time limit the court "shall render judgment" but that does not alter the situation. When the judge causes his order to be entered in the minutes, or when he files with the clerk a signed order to that effect, he has actually determined the issue. "The 'decision' in a case tried without a jury normally consists of written findings of fact and conclusions of law, separately stated, and filed with the clerk (Code Civ. Proc., § 632); such 'decision' is the actual determination of the lawsuit. The judgment is the formal expression and evidence of that decision and should be *entered* in conformity with it (Code Civ. Proc., § 664). The judgment is deemed *rendered* when the decision is filed; its *rendition* is a judicial act, its *entry* is *ministerial*. . . ." (Italics in the original.) (*Gossman* v. *Gossman* (1942) 52 Cal.App.2d 184, 196-197 [126 P.2d 178].) Here, while the underlying lawsuit was, of course, heard by a jury, the motion was tried by the court itself. When the court signed and filed its "Memorandum of Opinion" within 60 days after the mailing of notice of entry of judgment it ruled upon the motion and rendered judgment within the meaning of *Gossman, supra,* and of the term as used in section 629. This construction of the statute harmonizes it with its companion, section 660, and with what we believe to be the legislative intention.

### *On the Merits the Motion Was Erroneously Granted*

In *Smith* v. *Union Oil Co.* (1966) 241 Cal.App.2d 338, 343-344 [50 Cal.Rptr. 499], this court discussed the proper standard that governs in Jones Act cases as to when a judgment notwithstanding the verdict may be granted: "At least since 1957, it is firmly settled that, in cases arising under either the Jones Act or under the Federal Employers Liability Act, it is for the jury to determine whether or not the elements of liability exist and that a judgment notwithstanding the verdict may be granted only if, on no theory, could a verdict for plaintiff be supported. (*Rogers* v. *Missouri Pacific R.R. Co.* . . . . (1957) 352 U.S. 500 [1 L.Ed.2d 493, 77 S.Ct. 443]; and, to the same effect: *Davis* v. *Baltimore & Ohio R.R. Co.* (1965) 379 U.S. 671 [85 S.Ct. 636, 13 L.Ed.2d 594]; *Dennis* v. *Denver & Rio Grande Western R.R. Co.* (1963) 375 U.S. 208 [84 S.Ct. 291, 11 L.Ed.2d

256]; *Basham* v. *Pennsylvania R.R. Co.* (1963) 372 U.S. 699 [83 S.Ct. 965, 10 L.E. [sic] 2d 80]; *Gallick* v. *Baltimore & Ohio R.R. Co.* (1962) 372 U.S. 108 [83 S.Ct. 659, 9 L.Ed.2d 618]; *McLaughlin* v. *Eastern Engineering Co., Inc.* (D.C. E.D. Pa. 1963) 218 F.Supp. 380.)"

■ Tested by this rule, it is clear that the judgment notwithstanding the verdict must be reversed.

In his complaint, plaintiff alleged that defendant was negligent, among other things, in failing to provide him with a safe place to work, in failing to provide him with proper and adequate tools, in failing to keep in order aboard the vessel safe, adequate and proper gear, equipment and appliances and in negligently maintaining a certain topping lift jumbo block.

Plaintiff was a seaman on defendant's ship. When the cargo booms were raised it was found that a block was not turning properly. It turned out to be frozen because one of its constructive parts, a "shiv" was not turning. This condition, the plaintiff testified, can be caused by rust and is prevented by greasing the blocks.

Plaintiff was assigned the chore of freeing the block from its frozen position. To do that the block had to be disassembled by loosening a nut. Plaintiff testified that a bosun told him how to free the block.[3] To accomplish the job plaintiff was standing while straddling the boom and using the wrench. He had to hold on with one hand. With his left hand he placed the wrench on the nut. While applying pressure to see if the wedges he had inserted would hold, the wedges popped out and the wrench struck a finger on his right hand and fell. The wrench moved to where his right index finger was because "[t]he whole block just turned."

In trying to loosen the nut plaintiff testified he was acting in accordance with instructions given to him by the bosun and did not do the work any differently than the bosun told him to do it. On cross-examination he testified that he did not think the job was being done in an unsafe way; that he had no quarrel with the instructions given to him by the bosun; that the tools used were the only tools on the job; and that they were the right tools.

_____

[3]"A. He said to get two wedges, the heaviest sledge hammer and we have a wrench 14 or 36 inch, the biggest wrench we had on the ship. . . .

"A. Well, he told me to take the wedges and put them inside of the block to try and hold the shivs in place. . . .

"A. Yes, sir, he told me to free that block up."

The wrench broke the index finger of plaintiff's right hand. This is the injury for which damages were asserted.

Plaintiff continued to work for some time after the accident. He finally got the nut off after using a sledge hammer. He saw no evidence of any grease at all on the portion of the pin from which the nut had been removed. The nut itself was bone dry. If there was any grease on the pin he would have been able to see it.

One of the acts of negligence claimed by plaintiff is defendant's failure to keep the pin adequately greased. In oral argument counsel for plaintiff asserted that the manner in which plaintiff had to do the work, while straddling the boom, also constituted negligence on the part of defendant since plaintiff was not provided with a safe place to work.

On this appeal defendant contends that there was no substantial evidence of negligence. The argument is based on plaintiff's testimony that he did not know whether or not the block had been greased within the past three months; that plaintiff only saw the portion of the exposed pin from which the nut had been removed and, therefore, could not tell whether the rest of it had been greased; that another witness, the chief mate, testified that he saw grease coming out of the block; and that the block could have stuck for reasons other than being rusted.

The term "negligence" as used in the Jones Act is given a liberal interpretation. (*Rouchleau* v. *Silva* (1950) 35 Cal.2d 355, 361 [217 P.2d 929].) Federal law is to be applied. (*Soucie* v. *Trautwein Bros.* (1969) 275 Cal.App.2d 20, 24 [79 Cal.Rptr. 671].) ". . . [W]hat should be submitted to the jury in the Jones Act and Federal Employers' Liability Act cases . . . is considered a federal question. . . ." (*Peterson* v. *Permanente Steamship Corp.* (1954) 129 Cal.App.2d 579, 588 [277 P.2d 495].)

By virtue of language in the statute itself (46 U.S.C. § 688) provisions of the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) apply to Jones Act cases. (*O'Donnell* v. *Great Lakes Co.* (1943) 318 U.S. 36 [87 L.Ed. 596, 63 S.Ct. 488].) The standard of liability (*Forgione* v. *United States* (3d Cir. 1953) 202 F.2d 249, 252, fn. 4; *Villanueva* v. *California Tanker Co.* (D.N.J. 1960) 187 F.Supp. 591) and the tests of negligence (*Cordle* v. *Allied Chemical Corporation* (6th Cir. 1962) 309 F.2d 821, 823) and causation (*Curry* v. *United States* (N.D.Cal. 1971) 327 F.Supp. 155, 163) are the same. Decisions in Federal Employers' Liability Act cases apply to Jones Act cases (*Greenhaw* v. *Pacific-Atlantic S. S. Co.* (1950) 190 Ore. 182 [224 P.2d 918, 921]).

In *Rogers* v. *Missouri Pacific R. Co.* (1957) 352 U.S. 500 [1 L.Ed.2d 493, 77 S.Ct. 443], the court discussed the standards to be used to determine negligence and causation: ". . . [T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest,* in producing the injury . . . . It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. [Fn. omitted.] Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. [Fn. omitted.] Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. . . . [F]or practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death . . . . The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, [fn. omitted] from which the jury may with reason make that inference. . . ." (352 U.S. at pp. 506-508 [1 L.Ed.2d at pp. 499-500].) (Italics supplied.)

Wrenches have slipped on ships before, and seamen have been held entitled to recover for injuries caused by them. In *Michalic* v. *Cleveland Tankers, Inc.* (1960) 364 U.S. 325 [5 L.Ed.2d 20, 81 S.Ct. 6], liability was based on furnishing a wrench which was not suitable for the job. It was error to direct a verdict for defendant in light of testimony that the wrench used was old and kept slipping off of the nuts to which it was applied. In *Coast S. S. Co.* v. *Brady* (5th Cir. 1925) 8 F.2d 16, liability was based on evidence that the particular wrench was used on orders of the chief engineer and was as well adapted to the job as any wrench on the ship.

In the case at hand, insofar as the complaint pleads negligence predicated on furnishing an unsuitable wrench, we have been directed to no evidence (other than the occurrence of the injury itself) that the wrench, as a tool, was unsuited to the job for which it was being used. Therefore the jury verdict could not be upheld on this pleaded theory of negligence. We note, however, that there is testimony that the work was performed by plaintiff in the manner in which he was directed to perform it and that nevertheless the shivs popped out causing the block

to turn and the wrench to slip and be dropped. The evidence that the entire block turned when an effort was made to free the rusted nut, plays a role in plaintiff's claim that there was negligence from failure to grease the block. In addition, there was testimony that because of the location where the work had to be done, plaintiff had to hold on with one hand and use the wrench with the other, while straddling the boom.

The evidence which we have just recited would at least circumstantially justify the jury in concluding that the employer's negligence played some part, even though of the slightest degree, in producing the injury and we are enjoined (*Rogers* v. *Missouri Pacific R. Co., supra,* 352 U.S. 500, 507 [1 L.Ed.2d 493, 499-500]) not to look any further.

The trial court indicated in its memorandum of opinion that it granted the motion for judgment notwithstanding the verdict for other reasons. "All of the action involved in the incident was between the plaintiff, the wrench and the nut. The wrench was the regular kind used for purposes similar to this. The nut was the normal kind used on a block of this nature. The plaintiff's action with the wrench on the nut was the cause of the accident. [¶] There was no action by the block or by the wheels in the pulley that was stuck, that exerted any force in causing the action. There is no evidence of any negligence on the part of the defendant that contributed as a proximate cause of injury."

As noted above, causation exists in Jones Act cases if there is any evidence to "justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . ." (*Rogers* v. *Missouri Pacific R. Co., supra,* 352 U.S. at p. 506 [1 L.Ed.2d at p. 499].)[4]

The evidence that plaintiff was directed to free the block from the boom is sufficient to support an inference that defendant should have foreseen that plaintiff would have to work straddling the boom and

---

[4] Illustrative of the liberal treatment accorded to complaints of negligence and causation in Jones Act cases is *Gonsalves* v. *Coito* (1956) 144 Cal.App.2d 138 [300 P.2d 742]. There a crewman on a tuna boat reached into the water to adjust a rope which was controlling a live bait tank. There was evidence that if the tank had been rigged in a different manner or if the boat towing it had proceeded at a different speed the adjustment might not have been necessary. The crewman's hand was bitten off by a large fish, presumably a shark. The court held that the question whether the accident was causally related to any negligence was for the jury. In *Burke* v. *W. R. Chamberlin & Co.* (1942) 51 Cal.App.2d 419 [125 P.2d 120], a lumber carrier on a dock ran into a block of wood used in connection with unloading and catapulted the block through the air and down into the hold of the ship injuring a seaman. It was held that this evidence presented a question of proximate causation for the jury.

holding on with one hand. This evidence presented a jury question as to causation. The likelihood that the shivs might come out of the block, and that the block might turn when plaintiff performed as ordered, each alone, or both in combination, causing the wrench to slip, likewise presents a jury question.

Whatever might be the result if common law tests of negligence and causation were applied, we cannot say that negligence and causation have not been shown under the tests governing Jones Act litigation.

It is not necessary for us to consider plaintiff's argument that the trial court erred in granting the directed verdict on the issue of unseaworthiness.

The judgment notwithstanding the verdict is reversed, and the trial court is directed to reinstate the judgment on the verdict.

Files, P. J., and Jefferson, J., concurred.