James **FERRARA**, Plaintiff,

v.

A & V **FISHING, INC.**, Defendant.

Civ. A. No. 93–10568–JLT.

United States District Court,
D. Massachusetts.

May 11, 1995.

Joseph M. Orlando, Orlando & Associates, Gloucester, MA, for plaintiff.

Leonard H. Kesten, Steven C. Sharaf, Morrison, Mahoney & Miller, and Richard H. Pettingell, Pettingell & Regan, Boston, MA, for defendants.

*Memorandum*

TAURO, Chief Judge.

Plaintiff James Ferrara was injured when the fishing boat he captained, the JOSEPHINE MARIE, sank off the Massachusetts coast. He is now suing A & V Fishing, owner of the JOSEPHINE MARIE, claiming

that his injuries were caused by the unseaworthiness of the vessel. At issue are the parties' cross motions for summary judgment.

## I. Facts

The facts surrounding this controversy are not in dispute. The JOSEPHINE MARIE, a fishing vessel owned and operated by the defendant A & V Fishing, sank in February, 1992, after striking a submerged object. The parties agree that the ship was seaworthy at all times until the ship struck the submerged object and began to take on water.

As water accumulated in the lazarette, the ship took on a list. Then, in the moments prior to the actual sinking of the ship, Ferrara slipped on the deck and injured his knee. Ferrara's condition made it impossible for him to reach the life raft, and he was forced to jump overboard into rough seas. He was eventually rescued and brought to port, but claims that the experience has left him physically and emotionally scarred.

The parties agree that the JOSEPHINE MARIE was seaworthy when it left port, and that the ship remained seaworthy at all times until it struck a submerged object. On the basis of this stipulation, the parties have submitted the issue of liability to the court on cross motions for summary judgment.

## II. Analysis

■ A vessel is considered unseaworthy when it is unfit for its intended purpose. *Boudoin v. Lykes Brothers Steamship Co.,* 348 U.S. 336, 339, 75 S.Ct. 382, 384, 99 L.Ed. 354 (1954). In some cases, unseaworthiness may be presumed, for example, when a vessel goes down in otherwise calm seas. *See, e.g., The Doyle,* 105 F.2d 113, 114 (3d Cir. 1939) ("An unexplained sinking in calm water imports unseaworthiness.") Not every sunken vessel, however, is presumed unseaworthy. The law recognizes that some accidents are attributable to "the perils of the sea," [1] and are not properly chargeable to the condi-

tion of the vessel. A ship that goes down in a violent storm, for example, is not presumed unseaworthy.

■ The "peril of the sea" in this case was a submerged object. Both sides agree that a submerged object qualifies as a "peril of the sea." The plaintiff, however, has advanced a new legal theory. In seeking to limit the "peril of the sea" doctrine, the plaintiff argues that, though seaworthy until disaster struck, the ship became unseaworthy after striking the submerged object. According to the plaintiff, the JOSEPHINE MARIE became unfit for its intended purpose as it took on water and sank:

> When the F/V JOSEPHINE MARIE began to sink, she became entirely unfit for her intended purpose; that is, to float and to fish. Also, as the vessel sank by the stern, the stairs to the pilothouse were at such an angle that they were no longer fit for their intended purpose.

Plaintiff's Memorandum in Support, at 5.

The plaintiff's definition of unseaworthiness would effectively eliminate the "perils of the sea" exception. Accidents caused by "perils of the sea" will almost always result in dangerous conditions aboard a vessel. Even if the peril causes the ship to sink, as it did in this case, there is inevitably a period of time between the accident and the sinking. That period may last minutes, hours, or days. If a ship, regardless of the cause of its condition, can be characterized as unseaworthy merely because it eventually sinks, then every ship that rests on the ocean floor could have been characterized as unseaworthy. This court declines to adopt a concept leading to such an untenable result.

The court therefor concludes that, on the facts presented here, the "perils of the sea" defense covers not only damages caused by

---

1. BLACK'S LAW DICTIONARY, SIXTH EDITION, offers the following definition of "perils of the sea":
   In maritime and insurance law, natural accidents peculiar to the sea, which do not happen by the intervention of man, nor are to be prevented by human prudence.... Perils of the sea are from (1) storms and waves; (2) rocks, shoals, and rapids; (3) other obstacles, though of human origin; (4) changes of climate; (5) the confinement necessary of sea; (6) animals peculiar to the sea; (7) all other dangers peculiar to the sea.
   *Id.* at 1138 (West 1990).

the collision with the sunken object, but also the resulting injuries to the plaintiff.[2]

### III. Conclusion

For the reasons contained in this memorandum, the plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.

---

**2.** It is important to recognize that unseaworthiness may sometimes arise after the ship has left harbor. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549–50, 80 S.Ct. 926, 932–33, 4 L.Ed.2d 941 (1960). For the purposes of this case, the crucial issue is the cause of the unseaworthy condition, not the point at which the condition arose.