**Hugh GAPAY, Plaintiff,**

v.

**Q & S ENTERPRISES, INC., et al., Defendants.**

**No. A99–0415–CV (HRH).**

United States District Court, D. Alaska.

May 10, 2000.

---

Lanning M. Trueb, Beard Stacey, Anchorage, AK, James M. Beard, Beard Stacey, Seattle, WA, for Hugh Gapay.

Laura L. Farley, LeGros Buchanan & Paul, Anchorage, AK, for Q & S Enterprises, Inc.

## ORDER

HOLLAND, District Judge.

*Defendant's Motion for Summary Judgment; Plaintiff's Cross–Motion for Summary Judgment*

Defendant Q & S Enterprises, Inc., moves for summary judgment against plaintiff.[1] The motion is opposed. Plaintiff cross-moves for summary judgment against defendant on the issue of unseaworthiness.[2] The motion is opposed. Oral argument has not been requested.

## FACTS

Plaintiff is Hugh Gapay, a Jones Act seaman injured while employed aboard the fishing vessel F/V *Exito*. Plaintiff brings his admiralty and maritime claim against his employer, Q & S Enterprises, Inc., *in personam,* and against the fishing vessel *Exito* and its appurtenances, *in rem.*

The *Exito* is a 129–foot–long, 32–foot–wide, house aft, Bering Sea crab boat. Attached on the port side of the vessel at approximately midship is a pedestal crane roughly ten feet in height. Extending from the pedestal is a boom, approximately 20 feet long, with an articulating knuckle arm attached to the boom. The crane is used to stack crab pots on the deck of the *Exito*. The *Exito* is also equipped with a crab sorting table. The crab sorting table, which has rollers on its legs, moves back and forth on tracks in the deck of the vessel. When not in use, the crab sorting table is stowed on deck near the vessel's bow.

On the day prior to plaintiff's accident, temperatures dropped below 28 degrees Fahrenheit, winds reached 50 knots, and seas were 18 feet high. Freezing spray began to accumulate on the main deck of the *Exito*. At 2:00 a.m. on the day of the accident, the captain called the crew to the deck to chop ice using crow bars, metal baseball bats, and teflon mallets. By morning, the weather had dissipated to 25–knot winds and two-foot seas with a six-foot swell. At 6:00 a.m., the captain again ordered the crew to chop ice from the deck. Before de-icing the deck, however, the crew brought aboard nine or ten crab pots that were stored on deck. The crane was not used to move the crab pots; they were pushed into place by hand. The captain let the *Exito* drift and came down on deck to help de-ice the deck and move the crab sorting table. The captain ordered plaintiff to use the crane to move the crab sorting table. Although ice had been hammered and chipped from the front knuckle, one to three inches of ice remained on the boom of the crane.

The cable from the crane was hooked to one of the legs of the table and the engineer began moving the sorting table by both winching in on the cable and raising the boom arm of the crane. Plaintiff positioned his hands on the table and guided the movement of the table across the deck. A piece of ice the size of a volleyball, weighing ten to fifteen pounds, fell from the boom of the crane and landed on plaintiff's hand. The engineer witnessed plaintiff's accident. Plaintiff's claims arise from injuries resulting from the ice striking his hand.

Plaintiff claims that: (1) under the circumstances, it was negligent for the captain to order his crew to use the crane to move the crab sorting table, and (2) plaintiff was entitled to the warranty of seaworthiness that ice will not break free of the crane during its use and injure him.

1. Clerk's Docket No. 12.

2. Clerk's Docket No. 16.

**1142**

Defendant moves for summary judgment against plaintiff on both claims arguing that no liability exists. Defendant argues that plaintiff's injury was caused by a peril of the sea and not by any negligence of the defendant or unseaworthiness of the vessel.

Plaintiff cross-moves for summary judgment against defendant on the issue of the unseaworthiness of the vessel arguing that a ship's crane covered with ice renders the vessel unseaworthy when employed under the circumstances as described above.

## DISCUSSION

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

### Negligence

Defendant argues that plaintiff's injury was caused by a peril of the sea and not by any negligence of the defendant. Plaintiff responds that it was negligent to use the ice-covered crane to move the crab sorting table.

■■■ It is agreed that plaintiff is a Jones Act seaman. The Jones Act is remedial in nature and is intended to be liberally construed to give protection to injured seaman. *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 790, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). "In the performance of duty [the seaman] is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety of alternative courses of action." *Socony–Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939). The duty to provide a safe place to work rests upon a seaman's employer. *See id.* at 432, 59 S.Ct. 262. The Ninth Circuit has held "[t]he quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence." *Havens v. F/T Polar Mist,* 996 F.2d 215, 218 (9th Cir.1993). The

employer of a seaman whose negligent act plays any part, even the slightest, in producing a seaman's injury is responsible for all resulting damages. *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). This rule of law has been adopted by the Ninth Circuit.

> Negligence is a legal cause of an injury or damage if it played any part, no matter how small, in bringing about the injury or damage. Therefore, even if the negligence operated in combination with the acts of another, or in combination with some other cause, the negligence was a legal cause of the injury or damage if it played any part, no matter how small, in bringing about the injury or damage.

Ninth Circuit Pattern Jury Instruction No. 9.1.3 (1997).

■■■ On the day of accident, Captain Shelford admits that plaintiff was following his orders in using the ice-covered crane. Use of the crane to move the crab sorting table was not required. The ice on the boom of the crane could have been cleared. Plaintiff has established a genuine issue of material fact as regards whether defendant was negligent.

Defendant relies on the "peril of the sea" defense. Defendant argues that ice accumulating on the deck of the vessel is an "obvious and well-known risk" of the business of fishing in the Bering Sea, as are other weather related phenomena like storms and seas. Defendant further argues that ice accumulation is not something the vessel owner can control.

■■■ Defendant's arguments are unpersuasive. The test is whether the requirement of the sailor is one which a reasonably prudent superior would order under the circumstances. *Matson Navigation Co. v. Hansen,* 132 F.2d 487 (9th Cir.1942). More recently, the Ninth Circuit Court in *Catalina Cruises, Inc. v. Luna,* 137 F.3d 1422 (9th Cir.1998), held that a vessel owner owes a duty of reasonable care to avoid

hazards of the sea, finding the cruise ship negligent for not seeking shelter sooner or slowing speed in the face of heavy sea conditions. " 'What is required … is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding only an increased amount of care.' " *Id.* at 1425 (*quoting Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 170–71 (2d Cir.1983)).

Again, plaintiff has established a genuine issue as to whether defendant failed to exercise reasonable care for the safety of the crew in the face of the danger created by the ice-covered boom.

### Unseaworthiness

The parties cross-move for summary judgment on the issue of the unseaworthiness of the vessel. Defendant contends that where a vessel develops an unsafe condition as a result of a "peril of the seas," such unsafe condition does not constitute an unseaworthy condition. Defendant relies on *Ferrara v. A&V Fishing, Inc.,* 887 F.Supp. 26 (D.Mass.1995), *aff'd in part,* 99 F.3d 449 (1st Cir.1996), in support of its contention. However, defendant misrepresents the definition in *Black's Law Dictionary* for "perils of the sea" as quoted in *Ferrara.*

> Black's definition states, in pertinent part, that perils of the sea are "natural accidents peculiar to the sea, which do not happen by the intervention of man…."[3]

Defendant fails to include a pertinent part. The definition stated by the court in *Ferrara* reads:

> In maritime and insurance law, natural accidents peculiar to the sea, which do not happen by the intervention of man, *nor are to be prevented by human prudence….*

*Ferrara,* 887 F.Supp. at 27, n. 1 (emphasis added). Furthermore, the judgment of the district court was affirmed in part and vacated in part by the First Circuit Court of Appeals. In *Ferrara,* 99 F.3d 449 (1st Cir.1996), the court of appeals stated:

> the perils of the sea doctrine excuses the owner/operator from liability when "those perils which are peculiar to the sea, and which are of an extraordinary nature or arise from irresistible force or overwhelming power, and which cannot be guarded against by the ordinary exertions of human skill and prudence" intervene to cause the damage or injury.

*Id.* at 454 (*quoting R.T. Jones Lumber Co. v. Roen S.S. Co.,* 270 F.2d 456, 458 (2d Cir.1959)).

■ It is customary for the crew of a crab boat to keep ice from accumulating on the vessel. The crew of the *Exito,* for example, had spent much of the night prior to the day of the accident chopping ice off the deck using crow bars, metal baseball bats, and teflon mallets. Ice accumulation on a vessel can be distinguished from a wave or storm to the extent that the accumulation of ice can be controlled and guarded against by the use of ordinary skill and prudence. The accumulation of ice on the boom of the crane on the vessel *Exito* is not a peril of the sea.

■ Plaintiff argues that either of two alternatives establishes that the vessel was unseaworthy. Either the crane was not fit for its intended purpose because it was covered with one to three inches of ice or, alternatively, the crane failed under its expected use.

■ A shipowner owes every member of his crew the non-delegable duty to provide a seaworthy vessel. *Mahnich v. Southern Steamship Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); *Hudson Waterways Corp. v. Schneider,* 365 F.2d 1012, 1014 (9th Cir.1966). To be seaworthy, a vessel, including its crew and appurtenances, must be reasonably safe to use and perform the assigned tasks. *Admiral Towing Co. v. Woolen,* 290 F.2d 641 (9th Cir.1961). A failure of a piece of equipment establishes unseaworthiness. *Havens v. F/T Polar Mist,* 996 F.2d 215, 217–

3. Defendant's Motion for Summary Judgment at 5–6, Clerk's Docket No. 12.

18 (9th Cir.1993). In *Havens*, the Ninth Circuit stated:

A shipowner has an absolute duty to furnish a vessel and appurtenances reasonably fit for their intended use. The failure of a piece of vessel equipment under proper and expected use is sufficient to establish unseaworthiness.

Where a ship's equipment malfunctions under normal use, the trier of fact may infer that the equipment is defective. This is especially so where, as here, no evidence supports an alternative explanation for the malfunction.

*Id.* (internal quotations and citations omitted).

On one hand, Captain Shelford testified it was safe to use the crane because the ice on the boom was attached like cement. But when ice fell from the boom and injured plaintiff, the crane in essence failed. Based the captain's testimony, the ice-covered crane failed under the normal and expected use of moving the crab sorting table.

If, on the other hand, the crane was not safe for its intended use because of ice attached to the boom, then the crane became unseaworthy the moment the captain directed his crew to use the crane to move the crab sorting table. This latter argument is supported by the affidavit of Coast Guard licensed Captain Lawson Bronson. Mr. Bronson states:

The ice covered boom on the crane of the EXITO at the time of Plaintiff'[s] accident rendered the crane not fit for safe use. The ice should have been cleared off of the boom of the crane before crane or the crane's cable was used to move the crab sorting table. The crane should not have been used at all for moving [the] crab sorting table until the crew had the opportunity to clear the boom of ice. The crab sorting table could have been moved safely using alternate methods other than using the crane. Safe Alternatives existed for

clearing the crane's boom of ice prior to Plaintiff's accident. The crane and its boom could have been safely stowed along the port rail of the EXITO where the ice covered boom arm would not have been over the heads of the crewmen working on the deck of the EXITO.

In this case the employer and vessel owners failed to use reasonable care in instructing their crew to use a crane whose boom arm was coated with one to three inches of ice. Operating a crane under these circumstances represents an unreasonable risk of harm to the crew of the EXITO.[4]

Employing either method of analysis, plaintiff has established as a matter of law that the accumulation of ice on the boom of the crane rendered the crane and, therefore, the *Exito* unseaworthy.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is denied. Plaintiff's motion on the issue of unseaworthiness is granted.

---

4. Attached as Exhibit E to Plaintiff's Motion for Summary Judgment, Clerk's Docket No. 16.